1  DAVID P. STOEBERL (Mo. Bar No. 266706)
   dps@carmodymacdonald.com
2  JULIE L. WATERS (Mo. Bar No. 55314)
   juw@carmodymacdonald.com
3  CARMODY MACDONALD P.C.
   120 South Central Avenue, Suite 1800
4  St. Louis, MO 63105
   Tel: 314-854-8600
5  Fax: 314-854-8660

6  CARTER W. OTT (State Bar No. 221660)
   carter.ott@dlapiper.com
7  DLA PIPER US LLP
   153 Townsend Street, Suite 800
8  San Francisco, California 94107
   Telephone: 415-836-2500
9  Facsimile: 415-836-2501

10 Attorneys for Plaintiff
   MIDWEST TRANSPORT, INC.

ORIGINAL FILED

AUG 27 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-Filing

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

MIDWEST TRANSPORT, INC., a
Delaware Corporation,

　　　　　Plaintiff,

　　v.

FCE BENEFIT ADMINISTRATORS,
INC., a California Corporation,

　　　　　Defendant.

CASE NO. C 07-4408 JCS

COMPLAINT FOR (1) BREACH OF CONTRACT; (2) NEGLIGENCE; AND (3) NEGLIGENT MISREPRESENTATION

**DEMAND FOR JURY TRIAL**

-1-
COMPLT. FOR (1) BREACH OF CONTRACT; (2) NEGLIGENCE; AND (3) NEGLIGENT MISREP.

Midwest Transport, Inc., ("Midwest" or "Plaintiff") brings this Complaint, and in support alleges as follows:

## THE PARTIES

1. Midwest is a corporation organized under the laws of the State of Delaware with its principal place of business in Robinson, Illinois and employees located throughout the United States.

2. FCE Benefit Administrators, Inc. ("Defendant" or "FCE Benefit") is a corporation which holds itself out as being in the business of designing, implementing and administering fringe benefit plans for government contractors. Its corporate headquarters are located in Burlingame, California.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, because there is complete diversity between Midwest and FCE Benefit, and the amount in controversy exceeds the statutory limit.

4. Venue is proper in the Northern District of California because FCE Benefit's corporate headquarters are located in this district and the acts described in this Complaint are substantially related to this district.

5. Additionally, the FCE Benefit Third Party Administrator Agreement between Midwest and FCE Benefit (hereinafter referenced as "TPA Agreement"), contains a forum selection clause, which states:

> Governing Law and Venue: This Agreement will be governed by the internal laws of the State of California except to the extent preempted by ERISA, COBRA or other applicable federal law and the venue for resolving any dispute under this Agreement will be San Mateo County, California.

See TPA Agreement, Art. VIII(f).

6. A true and accurate copy of the TPA Agreement is attached hereto and incorporated herein by reference as **Exhibit A**.

/////

/////

## INTRADISTRICT ASSIGNMENT

7. Assignment within the district to the San Francisco Division is appropriate in that FCE Benefit is located in San Mateo County.

## FACTUAL ALLEGATIONS

### Introduction

8. Midwest is a federal government contractor, which delivers mail throughout the country for the U.S. Postal Service.

9. In 2004, Midwest determined that it would provide medical benefits for its employees through a third party administrator ("TPA").

### Midwest Chooses FCE Benefit

10. Midwest solicited several potential TPAs regarding the implementation of a medical benefits plan.

11. FCE Benefit bid for the contract as Midwest's TPA.

12. A true and accurate copy of the materials provided to Midwest is attached hereto and incorporated herein by reference as **Exhibit B.**

13. FCE Benefit's materials provided to Midwest made statements that FCE Benefit would "maintain jobs through careful budgeting of the fringe allowance to keep the contractor compliant and competitive" while helping Midwest to "avoid benefit-related cost overruns by providing equivalent employee benefits that meet, but do not exceed, the fringe dollar obligation" and "attend to the administrative details to be fully compliant with government regulations on fringe benefit obligations." *See* **Exh. B**.

14. FCE Benefit specifically advised Midwest that the cost of the medical benefits plan it would design, implement and administer would not exceed the fringe dollar obligation.

15. Based on FCE Benefit's representations, Midwest selected FCE Benefit as its TPA to design, implement and administer its medical benefit plan, consistent with applicable law.

/////
/////
/////

16. FCE Benefit entered into three different contracts with Midwest:

(1) The TPA Agreement (**Exh. A**);

(2) The FCE Benefit Adoption Agreement ("Adoption Agreement"); and

(3) The FCE Benefit Trust Agreement ("Trust Agreement").

17. A true and accurate copy of the Adoption Agreement is attached hereto and incorporated herein by reference as **Exhibit C.**

18. A true and accurate copy of the Trust Agreement is attached hereto and incorporated herein by reference as **Exhibit D.**

19. FCE Benefit drafted each of these agreements, and even copyrighted the TPA Agreement and the Adoption Agreement.

### Duties of FCE Benefit

20. FCE Benefit owes Midwest a duty to use the same care and skill that a similarly situated provider of similar services would exercise following commonly accepted industry and third party administrator practices in the providing administrative services for medical benefit plans.

21. FCE Benefits is responsible for the processing and payment of benefit claims except for benefits provided to Employees through an insurance policy.

22. Furthermore, the TPA Agreement requires FCE Benefit to administer all claims, including the "monitoring, identifying, preparing, filing, and recovering stop loss obligations." **Exh. A**, Art. IV(a).

23. The TPA Agreement also requires FCE Benefit to manage Midwest's medical plan, including "establishing and maintaining insurance and reinsurance coverage for plans." **Exh. A**, Art. IV(b).

24. Pursuant to the terms of the FCE Benefit Trust Agreement, Midwest established a funding policy and paid money into the fund.

/////

/////

/////

COMPLT. FOR (1) BREACH OF CONTRACT; (2) NEGLIGENCE; AND (3) NEGLIGENT MISREP.

**FCE Benefit's Selection of Stop-Loss Insurance Coverage**

25. Pursuant to its representations to Midwest, as well as the terms of its agreements with Midwest, FCE Benefit was to provide appropriate stop-loss insurance coverage, such that Midwest would never have to pay any more than it was required to pay for its fringe dollar obligation.

26. From May 1, 2005, through April 30, 2006, FCE Benefit selected Zurich Insurance Company to provide stop-loss insurance coverage.

27. A true and accurate copy of the Zurich's policy for stop-loss insurance ("Zurich Policy") is attached hereto and incorporated herein by reference as **Exhibit E**.

28. Thereafter, FCE Benefit selected Gerber Life Insurance Company to provide stop-loss insurance for Midwest, for a policy period beginning on May 1, 2006 running through May 1, 2007.

29. A true and accurate copy of the Gerber's policy for stop-loss insurance ("Gerber Policy") is attached hereto and incorporated herein by reference as **Exhibit F**.

30. The Zurich Policy and the Gerber Policy selected by FCE Benefit failed to provide complete stop-loss insurance coverage such that many claims were ineligible for reimbursement under either policy ("Unreimbursed Claims").

31. The Unreimbursed Claims are the direct and proximate result of FCE Benefit's failure to implement and monitor stop-loss insurance.

32. On information and belief, the Unreimbursed Claims exceed $700,000.00.

33. The Unreimbursed Claims are in excess of Midwest's Fringe dollar obligation.

**FCE Benefit Terminates its Relationship with Midwest**

34. Article IV of the FCE Benefit Trust Agreement provides that "[t]he Plan and Trust may be terminated on 60 days prior written notice to the other party, so long as the Plan and Trust Terminate on the anniversary of the insurance contract/s covering the Plan Benefits." **Exh. D**.

/////

/////

/////

35. Article VII of the FCE Benefit TPA Agreement, entitled "Amendment and Termination," provides, in relevant part:

> (b) <u>Term:</u> The term of this Agreement will begin on the effective date of this Agreement and end with terminated by either party on 60 days written notice to the other party, so long as this Agreement ends on the anniversary of the insurance contract/s covering the Plan benefits.
>
> (c) <u>Responsibilities on Termination:</u> On any termination of this Agreement, FCE will complete the processing of all requests for benefits under the Plan which are received by FCE prior to the effective date of termination except FCE will not be obligated to process benefits payment requests if Employer fails to fund benefit payments until all funds requested by FCE have been furnished.

**Exh. A, Art. VII.**

36. On March 9, 2007, FCE Benefit breached the Trust Agreement and the TPA Agreement by unilaterally terminating the medical benefits plan, giving Midwest no notice whatsoever.

37. FCE Benefit's termination did not occur on the anniversary of the insurance contract covering the plan benefits.

38. Since March 9, 2007, FCE Benefit has not administered any claims of Midwest's employees, despite its obligation to do so under the terms of the TPA Agreement and the Adoption Agreement.

39. As a result of this breach, Midwest, has been substantially damaged. The damages include, but are not limited to:

(1) The payment of Unreimbursed Claims;

(2) The expense of establishing a new medical benefit plan;

(3) The cost, including attorneys fees, incurred in responding to various governmental agencies, as claims have been filed against Midwest for non-payment of Unreimbursed Claims; and

(4) The expenses incurred in responding to employees who have been wrongfully informed by FCE Benefit's representatives that it was Midwest – not FCE Benefit – that unilaterally terminated Midwest's medical benefits plan.

## COUNT I—BREACH OF CONTRACT

40. Midwest incorporates and re-alleges each of the preceding paragraphs herein.

41. The TPA Agreement, Trust Agreement, and Adoption Agreement constitute valid, enforceable and binding agreements between Midwest and FCE Benefit.

42. Midwest performed all of its contractual duties owed to FCE Benefit.

43. FCE Benefit has breached the agreements it made with Midwest.

44. As a direct and proximate result of FCE Benefit's breaches of its contractual obligations, Midwest has been damaged, which damages continue to accrue.

## COUNT II—NEGLIGENCE

45. Midwest incorporates and re-alleges each of the preceding paragraphs herein.

46. FCE Benefit owed a duty of care to Midwest.

47. FCE Benefit breached its duty of care to Midwest.

48. As a direct and proximate result of FCE Benefit's breach of its duty, Midwest has been damaged, which damages continue to accrue.

## COUNT III—NEGLIGENT MISREPRESENTATION

49. Midwest incorporates and re-alleges each of the preceding paragraphs herein.

50. FCE Benefit represented to Midwest that FCE Benefit would establish, implement and administer a medical benefits plan for Midwest such that Midwest would never have to pay any amount over the fringe benefits it was already required to pay under applicable law.

51. FCE Benefit was negligent and acted with reckless disregard for the truth in making these representations to Midwest.

52. FCE Benefit intended that Midwest rely on these statements so that FCE Benefit would be selected as the TPA.

53. Midwest did, in fact, rely on FCE Benefit's representations.

54. Such reliance by Midwest was justified.

55. As a direct and proximate result of FCE Benefit's misrepresentations, Midwest has been damaged, which damage continues to accrue.

/////

**PRAYER FOR RELIEF**

Midwest Transport, Inc. requests that this Court enter judgment in its favor and against FCE benefit Administrators, Inc., awarding it all damages, interest and attorneys fees, in such amount proved at trial, and for such other relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Midwest demands a jury trial in this action.

Dated: August 27, 2007

CARMODY MACDONALD P.C.

DLA PIPER US LLP

By _____
CARTER W. OTT
Attorneys for Plaintiff
Midwest Transport, Inc.