# EXHIBIT E

## STOP LOSS POLICY



## ZURICH

ZURICH AMERICAN INSURANCE COMPANY
Schaumburg, Illinois

This Policy is issued by Zurich American Insurance Company to

Policyholder: Midwest Transport, Inc.
Policy Number: 36-36-638N
Effective Date: May 01, 2005

The Company agrees to reimburse the Policyholder for certain Plan Benefits the Policyholder has provided under a self-funded benefit plan (Plan). Such reimbursement will be subject to all the terms and conditions of this Policy.

This Policy is issued in consideration of:
(1) the application made by the Policyholder; and
(2) the payment of the initial premium on the Effective Date of this Policy; and
(3) the payment of all subsequent premiums when due; and
(4) the continual compliance by the Policyholder with all the terms and conditions of this Policy.

This Policy is governed by the laws of the State of Illinois

The Policyholder may cancel this coverage within ten (10) days after receipt of the Master Policy by returning it to the Company or the Agent. If it is returned for cancellation, the Company will refund any premiums paid. This coverage will be void.

In Witness Whereof, the Company caused this Policy to be executed and attested, and if required by state law, this Policy shall not be valid unless countersigned by its authorized representative.

The provisions on the following pages are a part of this Policy.

Licensed Resident Agent _____
(if required by law in this state)

Thomas A. Bradley
President
Zurich American Insurance Company

David Bowers
Corporate Secretary
Zurich American Insurance Company

This Policy is Non-Participating

## TABLE OF CONTENTS

|  | Section |
|---|---|
| Application for Insurance Coverage | I |
| Schedule of Insurance | II |
| Definitions | III |
| Specific STOP LOSS | IV |
| Aggregate STOP LOSS | V |
| Term of Policy | VI |
| Premiums and Aggregate Factors | VII |
| Claim Provisions | VIII |
| Exclusions and Limitations | IX |
| Termination | X |
| General Provisions | XI |

**ZURICH**

ZURICH AMERICAN INSURANCE COMPANY
Schaumburg, Illinois

## SECTION I

### APPLICATION FOR STOP LOSS INSURANCE COVERAGE

Applicant (Policyholder): Midwest Transport, Inc.  
Address: 205 South Cross Street  
City, State, Zip Code: Robinson, IL 62454

Proposed Effective Date: 05/01/2005  
Initial Premium Deposit:  
Telephone Number

Coverage Applied For: Specific and Aggregate

## SECTION II

### SCHEDULE OF STOP LOSS INSURANCE

Enrollment at Effective Date: 500 Plan A     0 Plan B  
Policy Period from May 01, 2005 through April 30, 2006  
Minimum number of lives and/or participation     375

### SPECIFIC STOP LOSS

SPECIFIC COVERAGE:    Yes _X_    No ___         Specific Deductible: $60,000  
Lifetime Limit of Liability per Covered Person: $100,000  
Claims Basis: ___ Incurred and Paid (12/12)         ___ Paid         _X_ Other _12/18_  
Benefit Period: Eligible Plan Benefits    Incurred from May 01, 2005 through April 30, 2006  
And Paid from May 01, 2005 through October 31, 2006  
Specific Percentage Reimbursable After Deductible:    100%  
Specific Advance Funding:    Yes _X_    No ___  
Losses Incurred prior to the Policy Period will be limited to _N/A_  
Aggregating Specific Deductible: _N/A_

### AGGREGATE STOP LOSS

Aggregate Coverage:    Yes _X_    No ___  
Claims Basis: _X_ Incurred and Paid (12/12)         ___ Paid         ___ Other _N/A_  
Benefit Period: Eligible Plan Benefits    Incurred from May 01, 2005 through April 30, 2006  
And Paid from May 01, 2005 through April 30, 2006  
Aggregate Percentage Reimbursable:    100%  
Monthly Aggregate Deductible Factors:  
    $255.33 Plan A    $255.33 Plan B

Minimum Annual Aggregate Deductible:    $1,531,980.00 based on number of initial Covered Units multiplied by the number of months in the Policy Period multiplied by 100% multiplied by the corresponding Monthly Aggregate Deductible Factors

Annual Aggregate Deductible for any one Policy Period means the greater of:
(1) The cumulative monthly total of Covered Units multiplied by the Monthly Aggregate Deductible Factors; or
(2) The Minimum Annual Aggregate Deductible

Limit of Liability for the Policy Period $500,000
Loss Limit Per Person under Aggregate $60,000
Monthly Aggregate Accommodation Option: Yes __ No X
Losses Incurred prior to the Policy Period will be limited to N/A

## PREMIUMS

Specific: Monthly $33.00 Employee
Aggregate: Monthly $7.00 Plan A    $15.00 Plan B
Monthly Aggregate Accommodation Option   N/A
Minimum Annual Specific Premium   $148,500
Aggregate Terminal Liability Option   N/A

## PLAN BENEFITS INCLUDED

Specific   X Medical                    Aggregate   X Medical
           __ Free Standing Drug Program            X Free Standing Drug Program
           __ Other N/A                             X Dental
                                                    X Vision
                                                    __ Other N/A

## ENDORSEMENTS INCLUDED

Domestic Facility Reimbursement    PERU Endorsements

Third Party Administrator: FCE Benefit Administrators, Inc.

If coverage is accepted, this SCHEDULE OF INSURANCE will become a part of the Policy.

INSURANCE FRAUD WARNING
Any person who with intent to defraud or knowing that he/she is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement, or conceals information for the purpose of misleading, is guilty of insurance fraud and is subject to criminal and/or civil penalties.

The applicant hereby applies for STOP LOSS insurance coverage and:

1. Represents that the answers included in this Application for STOP LOSS Insurance Coverage have been reviewed and are true and complete; and
2. Understands and agrees that the insurance applied for shall not become effective until the Application for STOP LOSS Insurance Coverage is approved by the Company and the initial premium deposit is received; and
3. Agrees that if the insurance applied for is approved by the Company, the applicant will pay all premium due after the Effective Date of the insurance, including any premium which may accumulate between the effective date of the insurance and the date the Policy is issued.

This Application for STOP LOSS Insurance Coverage, as it may be amended, will become part of the Policy, if issued.

Signed at Austin, TX   This 3rd day of August 20 06
Signed by _Marilyn Allard_   Title Trustee

**FOR HOME OFFICE USE ONLY**

Approved: • Yes   • No   By: _____   Date: _____

U-MSL-300-B CW (3/02)
Page 4

SECTION III

DEFINITIONS

**ANNUAL AGGREGATE DEDUCTIBLE** as shown in the SCHEDULE OF INSURANCE for any one Policy Period means the greater of:
(1) The cumulative monthly total of Covered Units multiplied by the Monthly Aggregate Deductible Factors; or
(2) The Minimum Annual Aggregate Deductible.

**AGGREGATING SPECIFIC DEDUCTIBLE** as shown in the SCHEDULE OF INSURANCE is a deductible applied in addition to the Specific Deductible. At the start of the Policy Period, Plan Benefits for each Covered Person who has met the Specific Deductible will be added together until the cumulative total equals the Aggregating Specific Deductible amount shown on the SCHEDULE OF INSURANCE. A Specific STOP LOSS reimbursement is not paid until the Aggregate Specific Deductible has been satisfied.

**BENEFIT PERIOD** means the period of time in which a claim must be Incurred by the Covered Person and Paid by the Plan to be eligible for reimbursement under this Policy. This period does not alter the Policy Effective Date and Policy Period, nor does it waive the eligibility requirements of this Policy.

**COVERED BENEFITS** means the benefits provided for Covered Persons by the Plan as defined in the Policy. Benefits for occupational accidents and illness and fees for administration purposes are not Covered Benefits.

**COMPANY** means Zurich American Insurance Company.

**COVERED PERSON** means any eligible individual entitled to benefits under the Policyholder's Plan.

**COVERED UNIT** for the purposes of determining the premiums payable or the Annual Aggregate Deductible means the following:
(1) Employee; or
(2) Employee with dependents; or
(3) Such other defined unit as agreed between the Company and the Policyholder.

**DEDUCTIBLE(S)** means the Specific Deductible(s), or Aggregate Deductible(s) or Aggregating Specific Deductible, as shown in the SCHEDULE OF INSURANCE.

**ELIGIBLE CLAIM EXPENSE(S)** means expenses which are Incurred by a Covered Person under the Plan(s) and for which benefits have been Paid by the Policyholder in accordance with the terms of the Plan(s) on the Claims Basis shown in the SCHEDULE OF INSURANCE. Eligible Claim Expenses which are covered under the terms of the Plan(s), paid by the Policyholder and not excluded under the terms of this Policy can be used either to satisfy the deductible(s) of this Policy or included in the calculation of the reimbursements payable under this Policy.

**EXPERIMENTAL OR INVESTIGATIONAL TREATMENT** means a treatment, procedure, service, device or drug (treatment) which will be considered to be experimental or investigational if:
1. The treatment has not been approved by the United States Food and Drug Administration at the time the treatment is provided; or
2. The treatment is the subject of on-going Phase I, II, or III clinical trials or under study to determine its maximum tolerated dose, its safety, its efficacy, or its toxicity as compared with the standard means of treatment or diagnosis; or
3. The treatment is governed by a written protocol that references determinations of safety, toxicity and/or efficacy in comparison to conventional alternatives and/or has been approved or is subject to the approval by an Institutional Review Board (IRB) or the appropriate committee of the provider institution; or
4. The treatment is being provided subject to the Covered Person's execution of an informed consent that references determinations of safety, toxicity or efficacy in comparison to conventional alternatives; or

5.  The predominant opinion of medical experts as expressed in published peer-reviewed literature is that further research is necessary in order to determine safety, toxicity or efficacy in comparison to conventional alternatives.

To determine whether treatment is experimental or investigational the Company, at the Policyholder's expense, will consider a consensus opinion of a three member board of certified specialists practicing in the same or a related specialty as the facility providing the treatment or course of treatment including drugs or medicines.

INCURRED means as follows:
(1) with respect to services, the date on which the services are rendered to the Covered Person; or
(3) with respect to disability income benefits, on the date each periodic benefit payment becomes payable to the Covered Person.

LIFETIME LIMIT OF LIABILITY means the amount shown on the SCHEDULE OF INSURANCE and is the maximum amount the Company will reimburse the Policyholder with respect to any Covered Person(s) under this Policy issued by the Company but not more than the Lifetime Maximum specified in the Plan.

MEDICALLY NECESSARY AND APPROPRIATE means that a service, supply or drug is provided by a recognized provider, is accepted by the United States Food and Drug Administration and is generally accepted as the standard of care for the control or cure of the illness or injury being treated by physicians practicing in the same or related specialty field.

PAID means:
1. the draft or check for payment of Plan Benefits is issued and released by the Policyholder by mail or other means or funds are transmitted electronically by the plan supervisor to the payee; and
2. sufficient funds are available:
   a. in the account from which the draft or check is issued for a non-zero balance account or from the account from which the funds are electronically transmitted; or
   b. to permit the draft or check to be honored in a zero-balance account.

PLAN(S) means the Policyholder's self-funded benefit plan(s) as described in its Plan(s) document as required by either Federal or state law. A copy of the Plan(s) document is attached to this Policy for the purpose of determining the Company's liability under this Policy.

PLAN BENEFITS means Eligible Claim Expenses which are Incurred by a Covered Person under the Plan(s) and for which benefits have been Paid by the Policyholder in accordance with the terms of the Plan(s) on the Claim Basis shown in the SCHEDULE OF INSURANCE. Plan Benefits which are covered under the terms of the Plan(s), Paid by the Policyholder and not excluded under the terms of the Policy can be used to either satisfy the Deductible(s) of the Policy or included in the calculation of the reimbursements payable under this Policy.

POLICY means this STOP LOSS Policy.

POLICYHOLDER means the applicant named in the Application of STOP LOSS Insurance Coverage.

POLICY PERIOD means the dates shown in the SCHEDULE OF INSURANCE of this Policy.

PROOF OF LOSS means receipt of a complete claim form, satisfactory to the Company, and other supporting documentation required by the Company.

THIRD PARTY ADMINISTRATOR means a firm or person which has been retained by the Policyholder to pay claims and/or provide other administrative services on behalf of the Policyholder.

WAR means expenses resulting from war or any act of war declared or undeclared, whether civil or international, and any substantial armed conflict between organized government forces of a military nature.

## SECTION IV

### SPECIFIC STOP LOSS

The Company will reimburse the Policyholder for the amount of any Plan Benefits which exceed the Specific Deductible as shown in the SCHEDULE OF INSURANCE on a Covered Person and are paid during the Benefit Period and subject to all other coverage provisions, limitations and exclusions.

While the determination of benefits under the Plan is the sole responsibility of the Policyholder, the Company reserves the right to interpret the terms and conditions of the Plan as it applies to this Policy. The Company has the sole authority to approve or deny reimbursements under this Policy.

If Specific Advance Funding is applicable as shown in the SCHEDULE OF INSURANCE the Company will pay the Specific STOP LOSS benefit in advance of the payment by the Policyholder provided:
(1) the Specific STOP LOSS payment exceeds the Specific Deductible, and
(2) the Policyholder has submitted proof that Plan Benefits have satisfied the Specific Deductible, and
(3) the Company has received all of the Proof of Loss information it requires; and
(4) the above requirements must be satisfied within the Benefit Period.

The continued availability of Specific Advance Funding is subject to:
(1) the Policyholder providing the Company with a copy of the front of the check payable to the provider within 10 days of the payment from the Company; and
(2) the Policyholder providing the Company with a copy of the front and back of the canceled check payable to the provider within forty-five (45) days of the receipt by the Policyholder of the payment from the Company.

If the requirements for Specific Advance Funding are met, Plan Benefits which qualify for Specific Advance Funding shall be considered as Paid.

## SECTION V

### AGGREGATE STOP LOSS

The Company will reimburse the Policyholder for the amount of any Plan Benefits which exceed the Annual Aggregate Deductible as shown in the SCHEDULE OF INSURANCE and are Paid during the Policy Period. Such reimbursement will be made in accordance with the Benefit Period and subject to all other coverage provisions, limitations and exclusions. Plan Benefits on each Covered Person in excess of the Loss Limit Per Person under Aggregate as shown in the SCHEDULE OF INSURANCE will not be included for purposes of determining the amount of the Aggregate STOP LOSS reimbursement under this Policy.

Reimbursements to the Policyholder for any Aggregate STOP LOSS provided under this Policy will be made after the end of the Policy Period provided:
the Company has received all of the Proof of Loss information it requires; and
the Company has completed any audit it may deem necessary.

While the determination of benefits under the Plan is the sole responsibility of the Policyholder, the Company reserves the right to interpret the terms and conditions of the Plan as it applies to this Policy. The Company has the sole authority to approve or deny reimbursements under this Policy.

If this Policy or the Aggregate STOP LOSS Coverage is terminated prior to the end of the Policy Period, the Annual Aggregate Deductible will not be pro-rated.

## SECTION VI
## TERM OF POLICY

This Policy will be in force during the Policy Period shown in the SCHEDULE OF INSURANCE and will automatically terminate at the end of the Policy Period unless it has been terminated earlier as provided in the TERMINATION provision, or unless the Company and the Policyholder have agreed upon terms to renew the Policy. In such event, the Company will issue to the Policyholder a new Policy or a renewal endorsement and SCHEDULE OF INSURANCE.

## SECTION VII

## PREMIUMS AND AGGREGATE FACTORS

The SCHEDULE OF INSURANCE shows the premium rates for each coverage and the Monthly Aggregate Deductible Factors for Aggregate STOP LOSS Coverage. The initial premium is due on the Effective Date of this Policy and subsequent premiums are due on the first day of each succeeding month in the Policy Period. The entire amount of the applicable premium shall be paid when due. The Company is not obligated to accept or apply any premium paid which is less than the entire amount due for any period. Premium payments shall be credited first to any past due and unpaid premium, in the order in which due. Premiums are not considered paid until the premium payment is received by the Company.

A grace period of 31 days is allowed for the payment of any premium except the first. The Company is not obligated to apply any premium which is received after the grace period and may, at its discretion, return any premium payment. The payment of any premium will not cause the insurance under this Policy to remain in force beyond the day before the next Premium Due Date.

The Company may change the premiums and Monthly Aggregate Deductible Factors on any of the following dates:
(1) The effective date that the Plan is amended; or
(2) The effective date that the Policyholder adds or deletes a subsidiary or affiliated companies or divisions; or
   The date an increase or decrease in the number of Covered Units exceeds 10% in any one month or 15% from the number of Covered Units on the first day of the Policy effective date; or
(3) The date that the Company is informed of a clerical error or discovers material misrepresentation of underwriting information. The Company's action will be in accordance with the Misstated Data Provisions under the GENERAL PROVISIONS of this Policy.

The Policyholder will furnish to the Company any information which the Company deems necessary to determine the amount of premium due under this Policy. The Company may, at its discretion, examine any records of the Policyholder at any reasonable time to confirm that premiums are being calculated and paid in accordance with this Policy. The Company will refund to the Policyholder any overpayment of premium made in error. Such refund shall be made only for the overpayments made during the Policy Period in which the error is uncovered and reported to the Company.

## SECTION VIII

## CLAIM PROVISIONS

The Policyholder warrants, upon presentation of a Plan Benefit for reimbursement, that all monies necessary to pay for the Plan Benefit have been paid to the Covered Person or the provider of services to the Covered Person.

The Policyholder will maintain records showing the complete details concerning any and all amounts paid for benefits not provided under the terms of the Plan. These payments for benefits not provided under the terms of the Plan will not be included in determining Plan Benefits reimbursable under this Policy.

## SPECIFIC STOP LOSS COVERAGE

With respect to Specific STOP LOSS coverage, the Policyholder will give written notice of claims to the Company on the Company's customary Proof of Loss form within thirty (30) days of the date the Policyholder becomes aware of the existence of facts which would reasonably suggest the possibility that Plan Benefits will be Incurred which are subject to this Policy or which are at least fifty (50%) of the Specific Deductible. The Policyholder will also comply with other claim reporting requirements, provided that the Company sends written notice to the Policyholder of these requirements and allows the Policyholder thirty (30) days to begin complying with the new requirements.

Failure to furnish written notice will not invalidate or reduce any claim, if it was not reasonably possible to provide such written notice within the time period required. However, if the Company determines it was reasonably possible to provide written notice within ninety (90) days after the date the claim was received by the Third Party Administrator, the Company may adjust the reimbursement to reflect savings the Company would have obtained had the Company received notice within ninety (90) days. In no event will the Company be liable for any claims submitted for reimbursement more than twelve (12) months after the end of the Benefit Period.

## AGGREGATE STOP LOSS COVERAGE

With respect to Aggregate STOP LOSS Coverage, written Proof of Loss, in a form and content satisfactory to the Company, must be given within thirty-one (31) days after the end of the Benefit Period. If it is not possible to give proof within this time period, proof must be given as soon as reasonably possible. Proof of Loss may not be given later than twelve (12) months after the end of the Benefit Period. The Policyholder will also comply with other claim reporting requirements, provided that the Company sends written notice to the Policyholder of these requirements and allows the Policyholder thirty (30) days to begin complying with the new requirements.

## OFFSET

The Company has the right to offset any benefits payable to the Policyholder under this Policy against premiums due and unpaid by the Policyholder. This right will not prevent the termination of this Policy for the non-payment of premium under the Termination Provision of this Policy.

## SECTION IX

## EXCLUSIONS AND LIMITATIONS

The following charges and/or expenses are not covered:

1. Expenses not specifically covered under the terms of the Plan.

2) Expenses Incurred by an individual who is not a Covered Person under the Plan when the expense was Incurred.

3. Expenses Incurred when the Plan is not in effect.

4. Expenses Paid by the Policyholder to the extent the Policyholder receives payments for those expenses from other insurers.

5. Charges for cosmetic surgery, unless from a congenital defect or due to an injury while a Covered Person is covered under the Plan unless the Plan is required to provide coverage under Federal law.

6. Expenses for the cost of any Experimental or Investigational Treatment, procedure, service, supply or drug.

7. Expenses for the cost of any treatment, procedure, service, supply or drug which is not Medically Necessary And Appropriate.

8. Expenses of persons who were not reported on the Disclosure Statement Form who should have been disclosed in compliance with the terms of the Disclosure Form.

9. Expenses for benefits which the Policyholder is not legally liable to pay under the Plan.

10. With respect to each Covered Person who is covered for benefits under Medicare or another health insurance plan, a reimbursement otherwise payable under this Policy shall be reduced by the amount of any similar Medicare benefit or a benefit under another health insurance plan so that total payments on behalf of a Covered Person shall not exceed one hundred percent of the Covered Person's Eligible Claim Expenses.

11. Expenses which are covered under Medicare or another health insurance plan for which the Policyholder is not liable under coordination of benefits, non duplication or other provisions in the Plan.

12. Expenses resulting from:
    a. any extra or non-contractual damages; or
    b. legal fees and expenses related to the defense of any claim under the Plan, including but not limited to, compensatory, exemplary, and punitive damages; or
    c. fines for statutory penalties awarded as a result of an act, omission or course of conduct committed by or for which the Policyholder was held responsible in connection with the Plan; or
    d. cost of the administration of claim payments, consulting fees, administration fees, or other services provided on behalf of the Policyholder by a third party.

13. Charges for any accidental bodily injury or sickness for which the Covered Person would be entitled to benefits under any Workers' Compensation or Occupational Disease Law whether or not the Covered Person claims his or her rights to such benefits.

14. Expenses related to War.

15. Expenses relating to:
    a. non-human organ/tissue transplants
    b. gene thereapy
    c. cloning

## SECTION X

## TERMINATION

**By the Policyholder**
The Policyholder may terminate this Policy on any Premium Due Date by giving the Company at least thirty-one (31) days advance written notice.

**By the Company**
At its option, the Company may terminate this Policy on the date that any one of the following occurs:
(1) in the event that the Policyholder has failed to perform any of the duties or obligations under this Policy, the Company will provide the Policyholder with a written notice specifying such acts or omissions and will have the right to terminate the Policy if the Policyholder does not rectify such failures within 60 days of the receipt of the written notice; or
(2) the date a petition in bankruptcy court is filed, with respect to the Plan or the Policyholder, whether voluntary or involuntary, or the Plan or the Policyholder becomes subject to liquidation, receivership or conservatorship; or
(3) whenever the percentage of employees participating in one or more Health Maintenance Organizations, prepaid plans, or insurance plans exceeds 40% of employees eligible to participate in the Plan, unless the Company has agreed in writing to continue coverage; or
(4) the number of lives falls below the minimum number of lives and/or participation as shown in the SCHEDULE OF INSURANCE; or

(5) the date the Plan is found to be in violation of Federal law; however, if it is determined that the Plan is not in compliance with such laws, the Company will allow the Policyholder 90 calendar days within which to achieve compliance. Failure to comply by such date will result in termination of the Policy as of the date the Plan was found to be in violation; or

(6) upon giving the Policyholder at least 60 days advance written notice.

### Automatic

This Policy will automatically terminate without notification required upon the earliest of the following dates:
(1) the date the Plan terminates; or
(2) at the end of any grace period when the premium due remains unpaid as of the premium due date; or
(3) the date the Policyholder has failed to provide funds for payment of claims under this Plan; or
(4) delegation by the Policyholder of its duties under this Policy to a Third Party Administrator which has not been approved by the Company; or
(5) sixty (60) days after the Effective Date if the Policyholder has failed to furnish the Company with any information or materials requested by the Company. Such information or materials must be of reasonable nature to allow the Company to determine its liability under this Policy. If the Policy is terminated under this provision, the Company's sole liability will be to return any monies given by the Policyholder as consideration for this Policy and less any claims or other expenses paid by the Company under this Policy. If such amounts paid by the Company are greater than the amount of the refund due the Policyholder, the Policyholder shall pay the amount of the deficit to the Company within thirty (30) days of notice from the Company. If repayment in full is not made within this thirty (30) day period, the Company will be entitled to assess monthly a late payment fee equal to 1.5% of the outstanding balance.

### Effect of Termination

In the event that this Policy is terminated by the Policyholder or by the Company under paragraphs (1), (2), (3), (4) or (5) of the preceding paragraph under the caption Automatic, the Minimum Annual Specific Premium as shown in the SCHEDULE OF INSURANCE shall be due and payable to the Company.

The Company has no obligation to reimburse the Policyholder for any Plan Benefits which are Paid after the date this Policy terminated.

## SECTION XI

## GENERAL PROVISIONS

### Entire Policy

The entire Policy consists of this Policy, the attached copy of the Policyholder's Application for STOP LOSS Insurance Coverage, the Disclosure Form and any amendments, riders or endorsements.

### Changes to the Policy

This Policy may be changed at any time by a written agreement between the Policyholder and the Company. The provisions of this Policy may be changed or waived only by the President, a Vice President or the Secretary of the Company and only in writing. The Company will not be bound by any promise or representations made by any other person. The Company may change any one or more or all of the items shown in the SCHEDULE OF INSURANCE by endorsement during the Policy Period in response to any change which is made to any applicable state or Federal law which change, in the sole opinion of the Company, may affect the Company's liability under this Policy.

### Parties to the Policy

This Policy is a contract between the Policyholder and the Company. This Policy does not create any right or legal relationship between the Company and any person covered under the Plan. The Company's sole liability under this Policy is to the Policyholder. Any and all reimbursements payable under this Policy will be made solely to the Policyholder. This Policy will not be deemed to make the Company a party to any contract or agreement between the Policyholder and a third party.

Plan Document
The Policyholder will provide to the Company a complete copy of the Plan Document governing the Plan. The Policyholder will submit to the Company, in writing, any proposed change to the provisions of the Plan. This must be submitted to the Company at least thirty (30) days prior to the effective date of the proposed change. The Company will have the right to modify premium rates and/or Monthly Aggregate Deductible Factors if the Company determines that its liability under this Policy has been affected by the change in the Plan. If the Company and the Policyholder cannot reach agreement with respect to the Plan changes, the Plan change will not affect the Company's liability under this Policy and the Policy will be administered as if the Plan had not changed. The Company's liability under the Policy will not be affected by any such charges made to the Plan unless and until the Company has sent its written approval of such charges to the Policyholder or its agent.

Third Party Administrator
The Policyholder may retain a Third Party Administrator to perform some or all of its duties under this Policy. Such Third Party Administrator must be named in the Application for STOP LOSS Insurance Coverage which is attached to and made part of this Policy. The Third Party Administrator must be approved by the Company to perform the Policyholder's duties under this Policy. The Policyholder will provide to the Company a copy of its agreement with the Third Party Administrator as well as a copy of changes thereto. These documents are NOT made part of this Policy.

Without waiving any of its rights under this Policy, and without making the designated Third Party Administrator a party to this Policy, the Company agrees to recognize the Third Party Administrator as the agent for the Policyholder. The Third Party Administrator is NOT the agent of the Company. Notwithstanding its appointment of a Third Party Administrator, the Policyholder is still obligated to see to the timely performance of its duties and obligations under this Policy. Furthermore, the Policyholder will hold the Company harmless from any liability arising from or related to any negligence, error, omission or malfeasance by the Third Party Administrator.

The Policyholder may change its Third Party Administrator. This must be submitted to the Company at least sixty (60) days prior to the effective date of change. Any changes to the designated Third Party Administrator without prior written approval by the Company will cause this Policy to automatically terminate as provided for in TERMINATION PROVISION.

Reporting
The Policyholder will submit by the 15th day of each month all proofs, reports and supporting documents requested by the Company, including but not limited to, a monthly summary of all eligible claim payments processed by the Policyholder and the total number of Covered Units covered under the Plan during the prior month. The Policyholder will be responsible for the investigation, audit, calculation and payment of all claims incurred under the Plan.

The Policyholder will furnish the Company with information required by the Company pertaining to the risks covered under this Policy. Such information must be received by the Company in a form and during a time period satisfactory to the Company.

Records
The Policyholder will maintain records of all Covered Persons under the Plan during the Policy Period and for a period of seven (7) years after termination of the Policy. The Policyholder will make all such records available to the Company as needed for the Company to determine its liability under this Policy.

Audit
The Company or its authorized representative will have the right to audit, at its own expense, the records of the Policyholder, the Third Party Administrator or any other person who is responsible for the administration of the Plan pertaining to the matters which affect the Company's liability under this Policy. The Policyholder agrees that payment of any reimbursements under this Policy will be conditioned upon the results of any audit requested by the Company.

Clerical Error
Clerical error, whether by the Policyholder or the Company, in keeping any records pertaining to the coverage, will not invalidate coverage otherwise validly in force nor continue coverage otherwise validly terminated. Any clerical error in data that the Policyholder or its agent provided to the Company must be corrected and promptly reported to the Company. The Company will within fifteen (15) days of receipt of corrected data decide the corrective course of action under the terms of Misstated Data provision below.

**Concealment, Fraud**
This entire Policy will be void:
(1) if, before or after making any reimbursement, the Company determines that the Policyholder or its agent has concealed or misrepresented any material fact or circumstance concerning this Policy, including any losses under the Plan; or
(2) in any case of fraud by the Policyholder or its agent.

**Misstated Data**
The Company has relied upon the underwriting information provided by the Policyholder or its agent in the issuance of this Policy. If the Company subsequently learns of information which was known but not disclosed prior to the issuance of the Policy, and such information would have affected the premium rates, Monthly Aggregate Deductible Factors, Specific or Aggregate Deductibles, terms or any other conditions for coverage, the Company will have the right to:
(1) rescind the Policy as of the Effective Date. In the event of Policy rescission, the Company's sole liability will be to return any monies given to the Policyholder as consideration for this Policy and less any claims or other expenses paid by the Company under this Policy. If such amount paid by the Company are greater than the amount of the refund due the Policyholder, the Policyholder shall pay the amount of the deficit to the Company within thirty (30) days notice from the Company. If repayment in full is not made with this thirty (30) day period, the Company will be entitled to assess monthly a late payment fee equal to 1.5% of the outstanding balance; or
(2) adjust the premium rates, Monthly Aggregate Deductible Factor, Specific or Annual Aggregate Deductibles respectively, terms or any other conditions for coverage as of the Effective Date by providing written notice to the Policyholder.

**Insolvency**
The insolvency, bankruptcy, financial impairment, receivership, voluntary plan of arrangement with creditors, or dissolution of the Policyholder or its Third Party Administrator will not impose on the Company any liability other than the liability defined in this Policy. The insolvency of the Policyholder will not make the Company liable to the creditors of the Policyholder, particularly the Covered Persons under the Plan.

**Liability**
The Company will not have any obligation under this Policy to directly pay any Covered Person or any provider of services or supplies to a Covered Person. The Company's sole liability is to the Policyholder. Nothing in this Policy will be construed to permit a Covered Person or any provider of services or supplies to a Covered Person to have a direct right of action against the Company. The Company is not a party to the Plan or to any modifications thereto. The Policyholder may not assign reimbursements under this Policy and the Company will not recognize any such assignments.

**Taxes**
The payment of reimbursement under this Policy will not include:
(1) any taxes which might be paid or payable by the Policyholder; or
(2) any tax liability, interest or penalty imposed by any regulatory or taxing authority.
The Policyholder agrees to:
(1) hold harmless the Company from any tax liability assessed against the Company on the basis of the Coverage provided under the Plan other than any tax levied upon the Company for the premium due under this Policy; and
(2) reimburse the Company for the amount of any such tax liability, interest, penalty or cost incurred by the Company as the result of such tax assessment. Such reimbursement shall be due and payable when the Policyholder receives the Company's notification that reimbursement is due.

**Notice**
For the purpose of any notice required from the Company under the provisions of this Policy, notice to the Third Party Administrator will be considered notice to the Policyholder, and notice to the Policyholder will be considered notice to the Third Party Administrator. For the purpose of any notice requirement from the Policyholder under the provisions of this Policy, neither notice from the Policyholder to the Third Party Administrator nor notice from the Third Party Administrator to the Policyholder will be considered notice to the Company.

**Subrogation**

The Company has the right to recover any and all payments that the Company has made to the Policyholder under this Policy from any person who is liable for such loss. If the Policyholder recovers any monies for a loss for which the Policyholder received payment under this Policy, the Company will be reimbursed first from such recovery to the extent of the Company's payments or payments to the Policyholder. This provision survives the termination of the Policy.

**Other Insurance**

The amounts otherwise payable under this Policy shall be reduced by the amount of any reimbursement or indemnity which the Policyholder may be entitled to receive with respect to the Company's liability under this Policy.

**Waiver**

Failure of the Company to strictly enforce its rights under this Policy shall not waive any such right, regardless of the frequency or similarity of the circumstances.

# BLANK ENDORSEMENT

# ZURICH

ZURICH AMERICAN INSURANCE COMPANY
Schaumburg, Illinois

Endorsement No. PERU-304

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

It is hereby understood and agreed that the following changes are made and incorporated into the Policy:

Retired employees are not covered.

Disabled Persons are covered if eligible by definition under the terms of the Employee Benefit Plan and will be covered upon receipt, review and acceptance of a disclosure statement.

If the enrollment drops below 375 lives, the group will be subject to review.

$2.90 Plan - Basic with $200 Deductible 75%-25% $160,000 Annual per Family Maximum (class IV), $60,000 Annual per Family Maximum (class III) Major Medical Wrap Around. Major Medical Wrap Around Applies to Hospital Room & Board Hospital Misc - Anesthesiology - Surgeons Benefit - X-Ray Lab and Supplemental Accident.

Coverage not valid for Contract Drivers.

$2,000 Benefit Maximum Pre-existing Condition limitation for Employees/Dependents without evidence of prior credible coverage.

Specific Reimbursement Percentage: 100%

Aggregate Premium Plan A, Class I & II $7.00
Aggregate Premium Plan B, Class III & IV - $15.00

Except for the above, this Amendatory Endorsement does not vary, alter, waive, or extend any of the terms of the Policy to which it is attached.

Effective Date: 05/01/2005           Attached to and forming a part of Policy No. 36-36-638N

Signed for by Zurich American Insurance Company