ROBERT D. EASSA, Cal. Bar No. 107970
reassa@filicebrown.com
PAUL R. JOHNSON, Cal. Bar No. 115817
pjohnson@filicebrown.com
FILICE BROWN EASSA & McLEOD LLP
1999 Harrison Street, 18th Floor
Oakland, CA 94612
Tel: (510) 444-3131
Fax: (510) 839-7940

Attorneys for Defendant
FCE BENEFIT ADMINISTRATORS, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| MIDWEST TRANSPORT, INC.<br><br>Plaintiff,<br><br>v.<br><br>FCE BENEFIT ADMINISTRATORS, INC.,<br><br>Defendants. | Case No. C 07-04408 CW<br><br>**OPPOSITION TO MIDWEST TRANSPORT, INC.'S MOTION TO DISMISS FCE BENEFIT ADMINISTRATORS, INC.'S COUNTERCLAIM FOR INDEMNITY AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SAME**<br><br>Date: December 6, 2007<br>Time: 2:00 p.m.<br>Judge: Honorable Claudia Wilken<br>Courtroom: 2 |

Defendant FCE Benefit Administrators, Inc. (hereinafter referred to as "FCE") respectfully files this Opposition to Midwest Transport, Inc.'s Motion to Dismiss FCE Benefit Administrators, Inc.'s Counterclaim for Indemnity, and would show the Court as follows:

### I. STATEMENT OF ISSUES

The issue to be decided is whether FCE, when viewed in the light most favorable to FCE and taking all facts alleged as true, can prove any set of facts to support a counterclaim for indemnity against Midwest.

-1-

OPPOSITION TO MIDWEST TRANSPORT, INC.'S MOTION TO DISMISS FCE BENEFIT ADMINISTRATORS, INC.'S COUNTERCLAIM FOR INDEMNITY AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SAME - C-07-04408 CW

02020 34122 SKARELS 574878.1

## II. STATEMENT OF RELEVANT FACTS

Midwest Transport, Inc. (hereinafter referred to as "Midwest") implemented a medical benefits plan for its employees, wherein employee contributions would be used to pay for the medical benefits which Midwest elected to provide to its employees. FCE was a third party administrator for Midwest's plan which facilitated the processing of medical benefits claims from the employee contributions made to the medical benefits plan. FCE is not a health insurer, nor did it assume a duty to personally pay any medical benefits of Midwest's employees. Through a series of events during which Midwest: (1) misrepresented the number of employees who would participate in the plan, thereby misrepresenting the amount of employee contributions; (2) elected a level of benefits not supported by the amount of employee contributions; and (3) failed to exercise its duty, authority and responsibility to decrease or delete benefits based upon recommendations of FCE, the amount of contributions made to the medical benefits plan was not sufficient to cover the amount of claims made by Midwest's employees under the plan.

Midwest filed the underlying lawsuit against FCE claiming that FCE breached a Third Party Administrator Agreement (hereinafter referred to as "TPA Agreement") and, therefore, is responsible for the cost of the medical benefits which Midwest chose to provide to its employees. Midwest also asserts a claim for negligence and negligent misrepresentation.

In answer to Midwest's complaint, FCE asserted several affirmative defenses, including but not limited to, the existence Midwest's own negligence and conduct in causing the injuries alleged in this underlying lawsuit. Similarly, FCE filed a counterclaim for indemnity pursuant to the clear provisions of the TPA Agreement. Such agreement provides that the Employer (Midwest), must indemnify FCE for *any* claim, liability, loss, damage, fine, penalties and costs, including reasonable attorney's fees ("Claims") which any FCE party may incur to the extent the claim arises from. . . *any failure of Employer* to comply with any covenant or obligation of Employer. . . *or any misrepresentation or breach of warranty by Employer*. . ." (emphasis added.)

Specifically, FCE pleaded in its counterclaim that Midwest (Employer) failed to comply with various covenants and obligations under the TPA Agreement, Health & Welfare Plan and

-2-

OPPOSITION TO MIDWEST TRANSPORT, INC.'S MOTION TO DISMISS FCE BENEFIT ADMINISTRATORS, INC.'S COUNTERCLAIM FOR INDEMNITY AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SAME - C-07-04408 CW

02020 34122 SKARELS 574878.1

Trust Agreement. FCE's making a counterclaim against Midwest relate to and directly arises out of these failures to comply.

Accordingly, by its unambiguous terms, the indemnity provision applies to *any* claim related to the *Employer's* (Midwest's) failure to comply with the TPA Agreement, the Health & Welfare Plan and the Trust Agreement or the *Employer's* misrepresentation under these agreements. Simply because Midwest is the party making the *claim* makes no difference in the application of this provision.

Midwest filed this *claim* against FCE. FCE contends that any damages Midwest has incurred or alleges is directly the result of Midwest's (Employer's) material breaches of the TPA Agreement, Health & Welfare Plan and Trust Agreement, as well as its misrepresentations to FCE as to the number of employees who would participate in the Health & Welfare Plan of Midwest Transport, Inc.; the amount of contributions that would be made to the Plan; and the status of certain employees being enrolled in the Plan. Midwest also failed to exercise its duty, authority and responsibility to decrease or delete benefits based upon recommendations of FCE in breach of the TPA Agreement. This conduct directly resulted in the alleged uncovered medical claims from Midwest's employees. As a result, pursuant to the TPA Agreement, Midwest must indemnify FCE from this claim related to its breaches of the TPA Agreement and misrepresentations.

Midwest relies upon inapplicable authority and misconstrues the nature of the indemnity provision, as well as the indemnity sought by FCE. Midwest further attempts to place limitations on the indemnity provision which neither exist, nor are implied. Accordingly, Midwest's Motion to Dismiss must be denied.

### III.  APPLICABLE LAW

In resolving this Rule 12(b)(6) motion, the Court must: 1) construe the counterclaim in the light most favorable to FCE; 2) accept all factual allegations as true; and 3) determine whether FCE can prove any set of facts to support a claim that would merit relief. *See Vector Research, Inc. v. Howard & Howard Attorneys P.C.*, 76 F.3d 692, 697 (6th Cir. 1996). Pursuant to the liberal federal practice of notice pleading, a claim need only provide a defendant "fair notice of what the

-3-

OPPOSITION TO MIDWEST TRANSPORT, INC.'S MOTION TO DISMISS FCE BENEFIT
ADMINISTRATORS, INC.'S COUNTERCLAIM FOR INDEMNITY AND MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT OF SAME - C-07-04408 CW

02020 34122 SKARELS 574878.1

plaintiff's claim is and the grounds upon which it rests." *Id. at 697-98, citing Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686 (1974).

The federal rules of civil procedure require only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). This standard contains "a powerful presumption against rejecting pleadings for failure to state a claim." *Gilligan v. Jamco Develop. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997), *citing Auster Oil & Gas, Inc. v. Stream*, 764 F.2d 381, 386 (5th Cir.1985); *Hall v. City of Santa Barbara*, 833 F.2d 1270, 1274 (9th Cir.1986) ("It is axiomatic that '[t]he motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted.'") (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357, at 598 (1969)); *see also De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978) (a motion to dismiss claims for legal insufficiency is a "motion viewed with disfavor in the federal courts"). The Court should not dismiss a counterclaim for failure to state a claim unless it appears beyond doubt that the party can prove no set of facts in support of its claim which would entitle it to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102 (1957).

## IV. ARGUMENT AND AUTHORITIES

### A. The Parties Entered Into a Valid Indemnity Agreement

Parties to an indemnity agreement are afforded wide latitude and "freedom of action" in allocating risk, subject to certain limitations of public policy. *See The Ratcliff Architects v. Vanir Construction Management, Inc.*, 106 Cal.Rptr.2d 1, 7 (2001); *Continental Heller Corp. v. Amtech Mechanical Services, Inc.*, 61 Cal.Rptr.2d 668, 671 (1997); *E.L. White, Inc. v. City of Huntington Beach*, 146 Cal.Rptr. 614, 619 (1978). The formal requirements of an indemnity agreement are that it must be in writing and signed by both parties. *See Lockheed Missiles & Space Co. v. Gilmore Industries, Inc.*, 185 Cal. Rptr. 409, 411 (1982).

In the present case, the parties agreed, as evidenced by their respective signatures on page 11 of the TPA Agreement (attached as Exhibit A to Midwest's Original Complaint), to be bound by the following indemnity provision:

> (d) <u>Indemnity by Employer</u>: Employer hereby agrees to indemnify, hold harmless and assume the defense of FCE, its directors, shareholders, officers, employees, agents and attorneys ("FCE Parties") from or against any claim, liability, loss, damage, fine, penalties and costs, including reasonable attorney's fees, ("Claims") which any FCE party may incur to the extent that Claim arises from (a) any failure of Employer to comply with any covenant or obligation of Employer under this Agreement, the Plan or Trust or (b) any misrepresentation or breach of warranty by Employer under this Agreement, the Plan or Trust. If Employer fails to do so, FCE may compromise and settle or defend against any Claim, and Employer will be obligated to indemnify and hold harmless TPA for all costs of defense, compromise and settlement, including any judgments incurred by or rendered against TPA, which arise out of the Claim. The provisions of this Section will survive termination of this Agreement and the Plan.

*See* Article V, section (d), page 7, of TPA Agreement attached as Exhibit A to Midwest's Original Complaint.

In its Motion to Dismiss, Midwest does not contest that it entered into this indemnity agreement or that it executed and signed the TPA Agreement. In fact, the TPA Agreement is attached to Midwest's Complaint as Exhibit A, and Midwest relies upon the TPA Agreement as part of its claims against FCE. Interestingly, while Midwest wants to enforce the TPA Agreement with respect an alleged breach of contract by FCE, it now wants to avoid enforcement of this clear and unambiguous provision in the TPA Agreement. The Court should not permit Midwest's selective application of the TPA Agreement.

**B. Indemnity Agreement is Clear, Explicit and Binding on Midwest**

Indemnity and similar exculpatory provisions are binding on signing parties and enforceable so long as they are clear, explicit and comprehensible in each of their essential details, such that the agreement, when read as whole, clearly notifies the prospective indemnitor of the effect of signing the agreement. *See Skrbina v. Fleming Companies*, 53 Cal.Rptr.2d 481, 490 (1996) (holding that employee's action against employer was barred by signed release); *Powers v.*

-5-

OPPOSITION TO MIDWEST TRANSPORT, INC.'S MOTION TO DISMISS FCE BENEFIT ADMINISTRATORS, INC.'S COUNTERCLAIM FOR INDEMNITY AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SAME - C-07-04408 CW

02020 34122 SKARELS 574878.1

1 *Superior Court*, 242 Cal. Rptr. 55, 56 (1987) (upholding motion for summary judgment in favor of aircraft lessor based upon releases).

Here, the indemnity provision provides that the Employer (Midwest) must indemnify FCE for *any* claim, liability, loss, damage, fine, penalties and costs, including reasonable attorney's fees ("Claims") which any FCE party may incur to the extent the claim arises from. . . ***any failure of Employer*** to comply with any covenant or obligation of Employer. . . ***or any misrepresentation or breach of warranty by Employer*** . . ." (emphasis added.) The indemnity provision is clear and unambigious that Midwest, as the indemnitor, must indemnify FCE, the indemnitee, with respect to "***any*** claim, liability, loss, damage, fine, penalties and costs, including reasonable attorney's fees." The underlying complaint filed by Midwest is a claim being asserted against FCE.

The indemnity provision is also clear and unambiguous in that it indemnifies FCE for conduct of the *indemnitor* (*Midwest*) in failing to comply with any covenant or obligation under the TPA Agreement, the Health & Welfare Plan or the Trust or any misrepresentation or breach of warranty by the *indemnitor* under the TPA Agreement, the Health & Welfare Plan or the Trust. Thus, contrary to Midwest's assertion, this indemnity provision protects and indemnifies FCE for conduct arising out of the indemnitor's (Midwest's) conduct. Midwest seems to suggest in its Motion to Dismiss that this indemnity provision is not enforceable because the indemnity provision attempts to relieve FCE, the indemnitee, of liability for its own negligence. In fact, the case law cited applies only to those instances where an indemnity provision is drafted to relieve the *indemnitee* from its own negligence. Clearly, the present indemnity provision does not so provide, nor has FCE so pleaded.

As set forth above, the indemnity provision is drafted to relieve the indemnitee (FCE) from conduct of the indemnitor (Midwest). It is axiomatic that Midwest should have to indemnify FCE for liability and costs brought about by its own conduct. Pursuant to the TPA Agreement, Midwest had certain responsibilities with respect to the maintenance and funding of the Health & Welfare Plan and with respect to the selection of benefits appropriate to the amount of employee contributions to the Plan. FCE and Midwest agreed that Midwest would indemnify FCE should

-6-

OPPOSITION TO MIDWEST TRANSPORT, INC.'S MOTION TO DISMISS FCE BENEFIT
ADMINISTRATORS, INC.'S COUNTERCLAIM FOR INDEMNITY AND MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT OF SAME - C-07-04408 CW

02020 34122 SKARELS 574878.1

Midwest fail to meet these responsibilities or made misrepresentations under the TPA Agreement, Health & Welfare Plan or Trust.

FCE contends and pleaded in its counterclaim that any damages Midwest has incurred or alleges, is directly the result of Midwest's (Employer's) material breaches of the TPA Agreement, Health & Welfare Plan and Trust Agreement, as well as its misrepresentations to FCE as to the number of employees who would participate in the Health & Welfare Plan of Midwest Transport, Inc.; the amount of contributions that would be made to the Plan; and the status of certain employees being enrolled in the Plan. Midwest also failed to exercise its duty, authority and responsibility to decrease or delete benefits based upon recommendations of FCE in breach of the TPA Agreement. This conduct directly resulted in the alleged uncovered medical claims from Midwest's employees. FCE, therefore, clearly has plead conduct which directly invokes the indemnity provision under the TPA Agreement. Accordingly, the indemnity provision, assuming that FCE's allegations are true, applies with respect to this claim asserted against FCE.

Midwest, by agreeing to enter into the TPA Agreement and executing it, agreed to the indemnity provision. It did not exclude itself from the application of this provision. The TPA Agreement has no immunity clause to protect Midwest from application of the provision. The provision protects FCE from suffering harm due to the conduct of Midwest. That harm is no less, simply because Midwest, as opposed to a third party, is making the claim. Midwest should not be permitted to file a lawsuit, the damages of which are due to its own wrongful conduct, and not have to concern itself with FCE's costs in defending such an action. The fact that Midwest desperately attempts to dismiss FCE's indemnity claim speaks to Midwest's level of concern of its own conduct, given that, as worded, the indemnity provision would not apply if Midwest complied with all of its covenants and obligations under the TPA Agreement, the Health & Welfare Plan and the Trust Agreement, which is denied, and did not make any misrepresentation or breach of warranty, which is also denied.

Midwest argues, without support, that this indemnity provision only applies to third parties. However, the indemnity provision does not limit its application to third parties. To the contrary, it

applies to *any* claim made against FCE based upon conduct by Midwest, including claims by third parties. In addition, it has no limitation as to the type of claim that can be made. The indemnity provision certainly includes protections from third party claims. However, the mere fact that these protections are encompassed in the provision does not preclude the application of the indemnity provision for other types of claims. Further, Midwest has provided no legal authority to support such a strained and limited reading of this indemnity provision.

Midwest, as damages in this action, seeks recovery for its employees' medical claims, that Midwest promised to its employees. These claims are based upon the benefits which Midwest elected to provide and sustain for its employees. Effectively, by seeking recovery of the cost of these claims in this lawsuit, Midwest is attempting to pass off its liability and responsibility to pay for the benefits it promised to its employees. Even if Midwest's claim does not constitute a third party claim against FCE for Midwest's own wrongful conduct, it does, in effect, include a third party liability claim for reimbursement of unpaid health care claims and benefits of Midwest's employees. Midwest cannot, on one hand, claim that the indemnity provision does not apply because it contends that it only applies to third party claims while pursuing recovery for damages theoretically owed to third parties.

Accordingly, Midwest's Motion to Dismiss must, for this additional reason, be denied.

## V. CONCLUSION

Midwest asserts a *claim* against FCE. FCE contends that any damages Midwest has incurred or alleges is directly the result of Midwest's (Employer's) material breaches of the TPA Agreement, Health & Welfare Plan and Trust Agreement, as well as its misrepresentations to FCE as to the number of employees who would participate in the Health & Welfare Plan of Midwest Transport, Inc.; the amount of contributions that would be made to the Plan; and the status of certain employees being enrolled in the Plan. Midwest also failed to exercise its duty, authority and responsibility to decrease or delete benefits based upon recommendations of FCE in further breach of the TPA Agreement. This conduct directly resulted in the alleged uncovered medical claims from Midwest's employees. As a result, and pursuant to the clear and unambiguous

-8-

OPPOSITION TO MIDWEST TRANSPORT, INC.'S MOTION TO DISMISS FCE BENEFIT ADMINISTRATORS, INC.'S COUNTERCLAIM FOR INDEMNITY AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SAME - C-07-04408 CW

02020 34122 SKARELS 574878.1

1 | language of the TPA Agreement, Midwest must indemnify FCE from this claim related to its
2 | breaches of the TPA Agreement and misrepresentations.

    Midwest relies upon irrelevant and inapposite authority in support of its position that the indemnity agreement is not valid. Midwest also misconstrues the nature of the indemnity provision, as well as the indemnity sought by FCE. Midwest further attempts to place limitations on the indemnity provision which neither exist, nor are implied.

    In evaluating a motion to dismiss for failing to state a claim upon which relief may be granted, the Court must: 1) construe the counterclaim in the light most favorable to FCE; 2) accept all factual allegations as true; and 3) determine whether FCE can prove any set of facts to support a claim that would merit relief. Motions to dismiss of this nature are viewed with disfavor, and based upon the foregoing, FCE has established that the indemnity provision applies to Midwest and states a valid counterclaim for relief under that provision. Accordingly, Midwest's Motion to Dismiss must be denied.

    WHEREFORE, defendant FCE Benefit Administrators, Inc, respectfully requests that this court deny plaintiff's motion to dismiss in its entirety, and that it grant such other and further relief as the court deems proper and just.

DATED: November 15, 2007

FILICE BROWN EASSA & McLEOD LLP

By: _____
ROBERT D. EASSA
PAUL R. JOHNSON
Attorneys for Defendant
FCE BENEFIT ADMINISTRATORS, INC.

OPPOSITION TO MIDWEST TRANSPORT, INC.'S MOTION TO DISMISS FCE BENEFIT ADMINISTRATORS, INC.'S COUNTERCLAIM FOR INDEMNITY AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SAME - C-07-04408 CW

02020 34122 SKARELS 574878.1