DAVID P. STOEBERL (Mo. Bar No. 46024) (Appearing *Pro Hac Vice*)
dps@carmodymacdonald.com
JULIE L. WATERS (Mo. Bar No. 55314) (Appearing *Pro Hac Vice*)
juw@carmodymacdonald.com
CARMODY MACDONALD P.C.
120 South Central Avenue, Suite 1800
St. Louis, MO 63105
Tel: 314-854-8600
Fax: 314-854-8660

CARTER W. OTT (State Bar No. 221660)
carter.ott@dlapiper.com
DLA PIPER US LLP
153 Townsend Street, Suite 800
San Francisco, California 94107
Telephone: 415-836-2500
Facsimile: 415-836-2501

Attorneys for Plaintiff
MIDWEST TRANSPORT, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MIDWEST TRANSPORT, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>FCE BENEFIT ADMINISTRATORS, INC., a California Corporation,<br><br>and<br><br>CALIFIA DEVELOPMENT CORP., d/b/a CDC Insurance Services, a California Corporation. | CASE NO. C 07-4408 (CW)<br><br>**FIRST AMENDED COMPLAINT FOR (1) BREACH OF CONTRACT AGAINST FCE BENEFIT ADMINISTRATORS, INC.; (2) NEGLIGENCE AGAINST FCE BENEFIT ADMINISTRATORS, INC.; (3) NEGLIGENT MISREPRESENTATION AGAINST FCE BENEFIT ADMINISTRATORS, INC.; (4) NEGLIGENT MISREPRESENTATION AGAINST CALIFIA DEVELOPMENT CORP.; AND (5) NEGLIGENCE AGAINST CALIFIA DEVELOPMENT CORP.**<br><br>**DEMAND FOR JURY TRIAL** |

Midwest Transport, Inc., ("Midwest" or "Plaintiff") brings this First Amended Complaint, and in support alleges as follows:

## THE PARTIES

1. Midwest is a corporation organized under the laws of the State of Delaware with its principal place of business in Robinson, Illinois and employees located throughout the United States.

2. FCE Benefit Administrators, Inc. ("FCE Benefit") is a corporation which holds itself out as being in the business of designing, implementing and administering fringe benefit plans for government contractors. Its corporate headquarters are located in Burlingame, California.

3. Califia Development Corporation, d/b/a CDC Insurance Services, Inc. ("CDC") is a corporation which holds itself out as being in the business as an insurance broker specializing in designing, implementing and administering cost effective fringe benefit programs for federal government contractors. Its corporate headquarters are located in Temecula, California.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, because there is complete diversity between Midwest and the Defendants, and the amount in controversy exceeds the statutory limit.

5. Venue is proper in the Northern District of California because FCE Benefit's corporate headquarters are located in this district and the acts described in this Complaint are substantially related to this district.

6. Additionally, the FCE Benefit Third Party Administrator Agreement between Midwest and FCE Benefit (hereinafter referenced as "TPA Agreement"), contains a forum selection clause, which states:

> Governing Law and Venue: This Agreement will be governed by the internal laws of the State of California except to the extent preempted by ERISA, COBRA or other applicable federal law and the venue for resolving any dispute under this Agreement will be San Mateo County, California.

See TPA Agreement, Art. VIII(f).

7.     A true and accurate copy of the TPA Agreement is attached hereto and incorporated herein by reference as **Exhibit A.**

## INTRADISTRICT ASSIGNMENT

8.     Assignment within the district to the San Francisco Division is appropriate in that FCE Benefit is located in San Mateo County.

## FACTUAL ALLEGATIONS

### Introduction

9.     Midwest is a federal government contractor, which delivers mail throughout the country for the U.S. Postal Service.

10.    In 2004, Midwest determined that it would provide medical benefits for its employees through a third party administrator ("TPA").

11.    CDC held itself out to Midwest as being in the business of selecting TPAs for government contractors, like Midwest.

12.    Based on CDC's representations, Midwest selected CDC as its insurance broker to solicit and select a TPA for its medical benefits program.

### Midwest Chooses FCE Benefit

13.    Midwest, by and through its insurance broker CDC, solicited several potential TPAs regarding the implementation of a medical benefits plan.

14.    FCE Benefit bid for the contract as Midwest's TPA.

15.    True and accurate copies of the materials provided to Midwest by FCE Benefit are attached hereto and incorporated herein by reference as **Exhibit B.**

16.    FCE Benefit's materials provided to Midwest made statements that FCE Benefit would "maintain jobs through careful budgeting of the fringe allowance to keep the contractor compliant and competitive" while helping Midwest to "avoid benefit-related cost overruns by providing equivalent employee benefits that meet, but do not exceed, the fringe dollar obligation" and "attend to the administrative details to be fully compliant with government regulations on fringe benefit obligations." *See* **Exh. B.**

17. FCE Benefit and CDC specifically advised Midwest that the cost of the medical benefits plan FCE Benefit would design, implement and administer would not exceed the fringe dollar obligation.

18. Based on FCE Benefit's representations and CDC's recommendations, Midwest selected FCE Benefit as its TPA to design, implement and administer its medical benefit plan, consistent with applicable law.

19. FCE Benefit entered into three different contracts with Midwest:

(1) The TPA Agreement (**Exh. A**);

(2) The FCE Benefit Adoption Agreement ("Adoption Agreement"); and

(3) The FCE Benefit Trust Agreement ("Trust Agreement").

20. A true and accurate copy of the Adoption Agreement is attached hereto and incorporated herein by reference as **Exhibit C.**

21. A true and accurate copy of the Trust Agreement is attached hereto and incorporated herein by reference as **Exhibit D.**

22. FCE Benefit drafted each of these agreements, and even copyrighted the TPA Agreement and the Adoption Agreement.

### Duties of FCE Benefit and CDC

23. FCE Benefit owes Midwest a duty to use the same care and skill that a similarly situated provider of similar services would exercise following commonly accepted industry and third party administrator practices in providing administrative services for medical benefit plans.

24. CDC owes Midwest a duty to use the same care and skill that a similarly situated provider of similar services would exercise following commonly accepted industry and insurance brokerage practices.

25. FCE Benefit is responsible for the processing and payment of benefit claims except for benefits provided to Employees through an insurance policy.

26. Furthermore, the TPA Agreement requires FCE Benefit to administer all claims, including the "monitoring, identifying, preparing, filing, and recovering stop loss obligations." **Exh. A, Art. IV(a).**

-4-

27. The TPA Agreement also requires FCE Benefit to manage Midwest's medical plan, including "establishing and maintaining insurance and reinsurance coverage for plans." **Exh. A, Art. IV(b).**

28. Pursuant to the terms of the FCE Benefit Trust Agreement, Midwest established a funding policy and paid money into the fund.

29. CDC asserted to Midwest that it would handle communications with FCE Benefit and continue to advise Midwest regarding the benefits program once it was implemented.

### FCE Benefit's Selection of Stop-Loss Insurance Coverage

30. Pursuant to its representations to Midwest, as well as the terms of its agreements with Midwest, FCE Benefit was to provide appropriate stop-loss insurance coverage, such that Midwest would never have to pay any more than it was required to pay for its fringe dollar obligation.

31. From May 1, 2005, through April 30, 2006, FCE Benefit selected Zurich Insurance Company to provide stop-loss insurance coverage.

32. A true and accurate copy of the Zurich's policy for stop-loss insurance ("Zurich Policy") is attached hereto and incorporated herein by reference as **Exhibit E**.

33. Thereafter, FCE Benefit selected Gerber Life Insurance Company to provide stop-loss insurance for Midwest, for a policy period beginning on May 1, 2006 running through May 1, 2007.

34. A true and accurate copy of the Gerber's policy for stop-loss insurance ("Gerber Policy") is attached hereto and incorporated herein by reference as **Exhibit F**.

35. The Zurich Policy and the Gerber Policy selected by FCE Benefit failed to provide complete stop-loss insurance coverage such that many claims were ineligible for reimbursement under either policy ("Unreimbursed Claims").

36. CDC failed to properly communicate with Midwest or advise it concerning the problems with the benefits program.

37. The Unreimbursed Claims are the direct and proximate result of FCE Benefit's failure to implement and monitor stop-loss insurance and CDC's failure to communicate with and advise Midwest.

38. On information and belief, the Unreimbursed Claims exceed $700,000.00.

39. The Unreimbursed Claims are in excess of Midwest's Fringe dollar obligation.

### FCE Benefit Terminates its Relationship with Midwest

40. Article VI of the FCE Benefit Trust Agreement provides that "[t]he Plan and Trust may be terminated on 60 days prior written notice to the other party, so long as the Plan and Trust Terminate on the anniversary of the insurance contract/s covering the Plan Benefits." **Exh. D.**

41. Article VII of the FCE Benefit TPA Agreement, entitled "Amendment and Termination," provides, in relevant part:

> (b) <u>Term:</u> The term of this Agreement will begin on the effective date of this Agreement and end with terminated by either party on 60 days written notice to the other party, so long as this Agreement ends on the anniversary of the insurance contract/s covering the Plan benefits.
>
> (c) <u>Responsibilities on Termination:</u> On any termination of this Agreement, FCE will complete the processing of all requests for benefits under the Plan which are received by FCE prior to the effective date of termination except FCE will not be obligated to process benefits payment requests if Employer fails to fund benefit payments until all funds requested by FCE have been furnished.

**Exh. A**, Art. VII.

42. On March 9, 2007, FCE Benefit breached the Trust Agreement and the TPA Agreement by unilaterally terminating the medical benefits plan, giving Midwest no notice whatsoever.

43. FCE Benefit has claimed that an employee of CDC contacted it and requested termination of the medical benefits plan, but Midwest never authorized CDC, or anyone else, to terminate the medical benefits plan.

44. FCE Benefit's termination did not occur on the anniversary of the insurance contract covering the plan benefits.

45. Since March 9, 2007, FCE Benefit has not administered any claims of Midwest's employees, despite its obligation to do so under the terms of the TPA Agreement and the Adoption Agreement.

46. As a result of FCE Benefit and CDC's conduct, Midwest, has been substantially damaged. The damages include, but are not limited to:

   (1) Unreimbursed Claims;

   (2) The expense of establishing a new medical benefit plan;

   (3) The cost, including attorneys fees, incurred in responding to various governmental agencies, as claims have been filed against Midwest for non-payment of Unreimbursed Claims; and

   (4) The expenses incurred in responding to employees who have been wrongfully informed by FCE Benefit's representatives that it was Midwest – not FCE Benefit – that unilaterally terminated Midwest's medical benefits plan.

## COUNT I—BREACH OF CONTRACT AGAINST FCE BENEFIT

47. Midwest incorporates and re-alleges each of the preceding paragraphs herein.

48. The TPA Agreement, Trust Agreement, and Adoption Agreement constitute valid, enforceable and binding agreements between Midwest and FCE Benefit.

49. Midwest performed all of its contractual duties owed to FCE Benefit.

50. FCE Benefit has breached the agreements it made with Midwest.

51. As a direct and proximate result of FCE Benefit's breaches of its contractual obligations, Midwest has been damaged, which damages continue to accrue.

## COUNT II—NEGLIGENCE AGAINST FCE BENEFIT

52. Midwest incorporates and re-alleges each of the preceding paragraphs herein.

53. FCE Benefit owed a duty of care to Midwest.

54. FCE Benefit breached its duty of care to Midwest.

55. As a direct and proximate result of FCE Benefit's breach of its duty, Midwest has been damaged, which damages continue to accrue.

/////

## COUNT III—NEGLIGENT MISREPRESENTATION AGAINST FCE BENEFIT

56. Midwest incorporates and re-alleges each of the preceding paragraphs herein.

57. FCE Benefit represented to Midwest that FCE Benefit would establish, implement and administer a medical benefits plan for Midwest such that Midwest would never have to pay any amount over the fringe benefits it was already required to pay under applicable law.

58. FCE Benefit was negligent and acted with reckless disregard for the truth in making these representations to Midwest.

59. FCE Benefit intended that Midwest rely on these statements so that FCE Benefit would be selected as the TPA.

60. Midwest did, in fact, rely on FCE Benefit's representations.

61. Such reliance by Midwest was justified.

62. As a direct and proximate result of FCE Benefit's misrepresentations, Midwest has been damaged, which damage continues to accrue.

## COUNT IV—NEGLIGENT MISREPRESENTATION AGAINST CDC

63. Midwest incorporates and re-alleges each of the preceding paragraphs herein.

64. CDC represented to Midwest that FCE Benefit would establish, implement and administer a medical benefits plan for Midwest such that Midwest would never have to pay any amount over the fringe benefits it was already required to pay under applicable law.

65. CDC was negligent and acted with reckless disregard for the truth in making these representations to Midwest.

66. CDC intended that Midwest rely on these statements so that CDC would earn fees on the selection of FCE Benefit.

67. Midwest did, in fact, rely on CDC's representations.

68. Such reliance by Midwest was justified.

69. As a direct and proximate result of CDC's misrepresentations, Midwest has been damaged, which damage continues to accrue.

/////

/////

FIRST AMENDED COMPLAINT
CASE NO. C 07-4408 (CW)

## COUNT V—NEGLIGENCE AGAINST CDC

70. Midwest incorporates and re-alleges each of the preceding paragraphs herein.

71. CDC owed a duty of care to Midwest.

72. CDC breached its duty of care to Midwest.

73. As a direct and proximate result of CDC's breach of its duty, Midwest has been damaged, which damages continue to accrue.

## PRAYER FOR RELIEF

Midwest Transport, Inc. requests that this Court enter judgment in its favor and against FCE Benefit Administrators, Inc. and Califia Development Corporation, d/b/a CDC Insurance Services, awarding it all damages, interest and attorneys fees, in such amount proved at trial, and for such other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Midwest demands a jury trial in this action.

Dated: October 22, 2007

CARMODY MACDONALD P.C.

By: _____
DAVID P. STOEBERL
Attorneys for Plaintiff
Midwest Transport, Inc.

-9-

FIRST AMENDED COMPLAINT
CASE NO. C 07-4408 (CW)