# EXHIBIT A

# MIDWEST TRANSPORT, INC.

## THIRD PARTY ADMINISTRATOR AGREEMENT

# FCE
BENEFITS

# THIRD PARTY ADMINISTRATOR AGREEMENT

THIS AGREEMENT is made by and between Midwest Transport, Inc. (Employer) and FCE Benefit Administrators, Inc. (TPA) each of which is more fully described in the Adoption Agreement of which this agreement is a part.

## ARTICLE I
## DEFINITIONS

The capitalized terms, words and phrases used in this Agreement will have the same meaning as those terms, words and phrases as defined in the Plan.

## ARTICLE II
## DUTIES OF EMPLOYER

(a) <u>Employer Contributions.</u> Employer shall make Contributions to the Trust for all Employees covered under the Plan.

(b) <u>Employer Records.</u> Employer shall provide to TPA all Earned Hours Records for each Employer Contribution. Alternatively, if contributions are paid as a monthly lump sum, Employer shall provide notice of all new hires who shall become Plan participants, and terminees who were Plan participants, monthly. The contribution rate structure/benefit design for Plan participants has been actuarially determined based on the assumption that all Employees within a specified group will participate in the Plan. If all Employees within a specified group do not participate in the Plan, Employer must inform FCE in writing timely and the contribution rate structure/benefit design for the group may be revised to minimize any potential negative effect on the Plan as a result of adverse selection. FCE reserves the right to request proof of participation by all Employees within a specified group.

(c) <u>Contribution Due Date.</u> The Employer shall be solely responsible for the accuracy of all Employer Contributions and related Earned Hours Records, and shall transmit them to TPA to be received by TPA no later than the 10th day of the month following the month for which the Fringe Benefit Amounts were earned. Alternatively, if contributions are paid as monthly invoiced amounts, contributions are due by the 1st of the month for which coverage is effective. The Employer shall provide the TPA with notice of any newly eligible employee prior to affected employee's coverage date, but no later than the last day of the month in which such newly hired employee becomes eligible for coverage.

1.

© Copyright 2004 FCE Benefit Administrators, Inc. All Rights Reserved

The Employer shall provide the TPA with notice of any terminated participant no later than the last day of the month in which such covered employee was terminated.

(d) <u>Penalty for Late Contributions.</u> If any Contribution becomes more than three months delinquent, then the TPA or Trustee may charge a delinquency penalty equal to the interest rate that the Money Market account would earn if contributions were not delinquent.

(e) <u>Failure to Provide Information.</u> In the event that a covered participant's employment has terminated, and as a result of the Employer's failure to provide the information required under II(c) above, the TPA or trustee has authorized and/or paid for benefits for such participant after the date on which such participant's coverage under the Plan should have terminated; or, a newly eligible employee has become effective for coverage under the Plan, but because the Employer has failed to provide the information required under II(c) above, the TPA or trustee has failed to authorize or pay for benefits for such newly eligible employee: all cost, liability and expense associated with such coverage, or the failure to provide such coverage, shall be borne by the Employer.

(f) <u>Suspension of Benefits for Failure to Provide Contributions.</u> Except to the extent that benefits are provided to Employees through an insurance policy, if Employer fails to make the total Contribution required by the due date under II(c) above, then TPA will at any time have the right, in its sole discretion, to suspend payment of any or all benefits under the Plan incurred after the last month for which Contributions were made until Contributions are brought current, and TPA may notify all Employees affected by that suspension. In the event that benefits are provided through an insurance policy covering eligible Employees and Employer fails to make the total Contribution required by the due date under Section II(c) above, then TPA will at any time have the right, in its sole discretion to suspend payment of premiums for such benefits until Contributions are brought current, and TPA may notify all Employees affected by that suspension.

(g) <u>Design of Benefits.</u> The Employer will be the Plan Administrator. The Plan Administrator shall have the duty, authority and responsibility to authorize and approve the design of benefits under the Plan, and manage the investment of the Trust Fund, directly or through an Investment Manager, in a manner which assures that the Employer's Contributions required under Article II hereof are sufficient to adequately fund the Trust to pay all costs of providing benefits under the Plan. The Plan Administrator shall have the duty, authority and responsibility, based upon the recommendations from the TPA, to increase, decrease, add or delete Plan benefits under certain conditions or circumstances. Those conditions or circumstances include but are not limited to:

1. a substantial change in employee hours and/or contributions;
2. an unexpected, unplanned benefit utilization of the Plan;
3. a change in reserve requirements;
4. a substantial change in the cost to administer the Plan or in the cost of reinsurance or other expenses properly chargeable to the Plan; or

2

© Copyright 2004 FCE Benefit Administrators, Inc. All Rights Reserved

    5. a change in the location of the service contract(s).

The Plan Administrator shall have the power in its sole and absolute discretion to determine when Plan benefit modifications are required. The Plan Administrator shall furnish a summary of any material reduction in covered services or benefits to all affected participants of the Plan no later than 90 days after the date of adoption of the modification or change.

(h) <u>Dispositions of Unallocated Asset</u>. In addition to its other rights and obligations hereunder, the Plan Administrator shall have the authority, from time to time, to establish guidelines for the disposition of unallocated asset, as hereinafter defined, to provide additional benefits to Participants and beneficiaries hereunder, either for the balance of the then current Plan Year, or for a shorter period thereof. For purposes hereof, "unallocated asset" shall mean funds held in this Trust that are in excess of the following amounts paid or required to be retained by the Trust:

1. claims;
2. insurance premiums;
3. plan expenses;
4. Aggregate Deductible or Hold Back Amounts, as those terms are defined in the stop loss insurance policies owned by the Plan;
5. prepaid contributions/run out liability; and
6. necessary trust operating capital.

In exercising its authority to establish guidelines for the disposition of unallocated asset to provide additional benefits hereunder, either for the balance of the then current Plan Year, or for a shorter period thereof, the Plan Administrator shall not exercise its discretion in a discriminatory manner. In the event that the Plan Administrator adopts guidelines for the disposition of unallocated asset to provide additional benefits hereunder, the Plan Administrator shall provide the Participants and beneficiaries under the Plan with written notice of such additional benefits, and a reasonable period of time within which to submit a claim for payment of such benefits. In addition, the Plan Administrator shall provide the Trustee and the TPA with written notice of such guidelines, as well as with written directions to pay such benefits, in such amounts, for claims incurred during such period(s) of time, and upon such terms and conditions as the Plan Administrator may designate, and any other guidance necessary and appropriate in order to implement such guidelines and provide such additional benefits.

## ARTICLE III
## DUTIES OF EMPLOYER DELEGATED TO TPA

(a) <u>Duties Delegated to TPA</u>. The Employer as Plan Administrator shall have the following additional duties, authorities and responsibilities, but such duties, authorities and responsibilities shall be delegated to TPA:

3

© Copyright 2004 FCE Benefit Administrators, Inc. All Rights Reserved

1. To administer claims for benefits under the Plan except for benefits provided to Employees through an insurance policy;

2. To prepare, sign, and file any and all reports to and tax returns for governmental authorities and disclosures to Employees required under applicable law for the Plan and Trust based on Earned Hour Records and other information provided by Employer or Plan Administrator;

3. To keep on Employer's behalf all books of account, records and other data necessary to administer the Plan on Employer's behalf and to meet the reporting and disclosure requirements of applicable law; and

4. Prepare and submit aggregate reports concerning paid claims to the reinsurance or stop loss carrier engaged by the Plan Administrator in accordance with the terms of such agreement.

TPA shall also assist Plan Administrator in designing benefits under the Plan and benefit modifications described in Article II(g). TPA shall provide for the processing and payment of benefit claims except for benefits provided to Employees through an insurance policy.

## ARTICLE IV
## SERVICES OF THIRD PARTY ADMINISTRATOR

(a) <u>Claims Administration</u>: Services, to the extent applicable to the Plan and necessary for administration of the Plan, include:

1. accepting and receiving all requests for benefit payments under the Plan;
2. determining the entitlement to Plan benefits for each request made for benefits under the terms of the Plan and under cost control standards and procedures and practices established by FCE and approved in writing by Employer;
3. approving, processing and paying medical, prescription, dental, vision, short term disability, and death claims;
4. giving written notice to any person of any denial of benefits after a request has been made and the rights of appeal of that denial, each in a manner agreed to between Employer and FCE and which complies with the claims procedure requirements of Section 503 of ERISA;
5. preparing and transmitting a copy of the Explanation of Benefits (EOB) to participants for each processed claim;
6. preparing and transmitting daily data transfer to outside prescription drug card provider;
7. coordinating with PPO Network providers and UR/UM service providers;
8. preparing and transmitting participant ID Cards;
9. coordinating benefits between FCE plans and other benefit plans;

4

© Copyright 2004 FCE Benefit Administrators, Inc. All Rights Reserved

10. identifying and describing benefits to providers;
11. explaining benefits to participants and their advocates;
12. processing and paying Medicaid, Medicare, Champus and Tricare reimbursement demands;
13. administering and collecting subrogation and other third party obligations; and
14. monitoring, identifying, preparing, filing, and recovering stop loss obligations.

If an appeal is requested, TPA will conduct the review and TPA will either (i) render a decision in accordance with the Plan SPD or (ii) refer the appeal to the Employer for a decision. Except to the extent provided in the immediately following sentence, Employer has the power in its sole and absolute discretion to make the final decision on entitlement to Plan benefits for any request. To the extent that any Plan benefits are provided by an Insurer under an insurance policy covering Employees of the Employer, the Insurer will have the power in its sole and absolute discretion to interpret the provisions of its insurance policy including, but not limited to, eligibility for coverage, eligibility for benefits, benefits amounts, render decisions on appeals, and all other matters relating to such insurance policy.

FCE will be responsible for making decisions on claims for benefit. FCE will have no fiduciary obligations under the Plan on account of this Agreement. In reviewing and making decisions on claims for benefits, FCE will have the discretionary authority to interpret the terms of the Plans and the authority and responsibility to make factual determinations, including determining eligibility for benefits and validity of charges submitted for reimbursement.

(b) <u>Plan Management</u>: Services, to the extent applicable to the Plan and necessary for administration of the Plan, include:

1. designing initial benefit schedules;
2. tracking benefit use and subsequent design modifications;
3. preparing and disseminating specimen documents;
4. preparing and disseminating loss ratio reports, proposals, illustrations, certificates, booklets and policies;
5. establishing and maintaining insurance and reinsurance coverage for plans; and
6. conducting ongoing coordination with insurance and reinsurance underwriters.

(c) <u>Eligibility/Compliance Administration</u>: Services, to the extent applicable to the Plan and necessary for administration of the Plan, include:

1. reconciling contributions and benefit coverage appropriate to employee's work schedule to earned hours payroll record as required by regulating Contracting Agency;
2. updating the participant database each payroll period with each employee's fringe qualified earned hours;
3. processing new hire enrollment information and Employee termination/COBRA information; and

© Copyright 2004 FCE Benefit Administrators, Inc. All Rights Reserved

    4. preparation and transmission of HIPAA Certificate of Creditable Coverage.

(d) <u>Plan Representative Services</u>: Services, to the extent applicable to the Plan and necessary for the administration of the Plan, include:
1. site visits to explain benefits and enroll initial participant group;
2. facilitation of information necessary to obtain and disseminate employee ID cards;
3. completion of New Group Information form for each covered contract site and timely updates to same reflecting changes in contributions, contact personnel, contact information and the like;
4. periodic site revisits to repeat the benefit enrollment and presentation process due to employee and management turnover;
5. meetings on behalf of the employer, plan, or both with government agencies, collective bargaining representatives, in-house and outside legal counsel, and the like.;
6. telephonic and personal accessibility to aid and assist employees and managers to understand and use the benefit plan;
7. transmittal of employee communication forms and documents;
8. interfacing between employer and plan participants to facilitate plan related communication and resolve issues;
9. employee advocacy on claims coverage issues; and
10. general on-site trouble shooting.

(e) <u>Discretionary Authority:</u> Except as specifically authorized in this Agreement, FCE will act in all matters only on the express written direction of Employer. At no time will FCE exercise any discretion or independent authority with respect to the performance of its services under this Agreement and no such independent authority or discretion has been granted to FCE by Employer under this Agreement or any other agreement.

(f) <u>Independent Legal Advice:</u> FCE will not provide legal or tax advice to Employer and Employer understands and confirms that FCE has advised it to seek the advice of independent legal, tax, accounting or other advisor if Employer has any questions about the Plan, Trust, SPD or terms and conditions for services by FCE as third party administrator. Employer acknowledges that it will neither rely, nor act solely or exclusively, on information provided by FCE to Employer under this Agreement.

ARTICLE V
COVENANTS OF EMPLOYER

(a) <u>Payment of Administrative Fees</u>: Employer authorizes the payment to FCE and/or other named service providers of the administrative charges specified in the Fee Schedule described in Exhibit 'A' of the Adoption Agreement. In the event FCE or Trustee is requested or required to provide or produce information or materials other than that described herein, FCE and/or Trustee shall be entitled to reimbursement from the Trust

6

© Copyright 2004 FCE Benefit Administrators, Inc. All Rights Reserved

for the reasonable costs associated with providing and producing such information and materials, including but not limited to copying, printing, postage and professional time.

(b) <u>Primary Responsibility</u>: Except as specifically limited by this Agreement, Employer will have exclusive authority and responsibility for the Plan, its operation and compliance with applicable law.

(c) <u>Furnish Necessary Information</u>: Employer will furnish to FCE all Employee, Participant and Dependent information necessary to determine eligibility for benefits under the Plan. Employer will also provide FCE with information about events affecting Employees, Participants and their Dependents, which would entitle them to a notice of rights to continuation of health benefits under the Plans under COBRA.

(d) <u>Indemnity by Employer</u>: Employer hereby agrees to indemnify, hold harmless and assume the defense of FCE, its directors, shareholders, officers, employees, agents and attorneys ("FCE Parties") from or against any claim, liability, loss, damage, fine, penalties and costs, including reasonable attorney's fees, ("Claims") which any FCE Party may incur to the extent that Claim arises from (a) any failure of Employer to comply with any covenant or obligation of Employer under this Agreement, the Plan or Trust or (b) any misrepresentation or breach of warranty by Employer under this Agreement, the Plan or Trust. If Employer fails to do so, FCE may compromise and settle or defend against any Claim, and Employer will be obligated to indemnify and hold harmless TPA for all costs of defense, compromise and settlement, including any judgments incurred by or rendered against TPA, which arise out of the Claim. The provisions of this Section will survive the termination of this Agreement and the Plan.

(e) <u>Withholding</u>: Employer will comply with applicable federal and State income and payroll withholding laws for fringe benefit contributions and employee wage deductions. Unless otherwise notified in writing by Employer, TPA is authorized by Employer to assume that each recipient of benefits under the Plan is a resident of the United States or if not a resident is a United States citizen.

(f) <u>Insurer</u>. To the extent that any Plan benefits are provided by an Insurer under an insurance policy covering Employees of the Employer, the Insurer will have the power in its sole and absolute discretion to interpret the provisions of its insurance policy including, but not limited to, eligibility for coverage, eligibility for benefits, benefits amounts, decisions on appeals, and all other matters relating to such insurance policy.

## ARTICLE VI
## COVENANTS OF TPA

(a) <u>Professional Liability Insurance</u>: TPA will maintain professional errors and omissions insurance in amounts consistent with and customary for an administrator of its size.

7

© Copyright 2004 FCE Benefit Administrators, Inc. All Rights Reserved

(b) <u>Standard of Care</u>: TPA will use the same care and skill as a similarly situated provider of similar services would exercise following commonly accepted industry and third party administrator practices in the provision of administrative services for the Plans.

(c) <u>No Fiduciary Status</u>: Employer has the exclusive authority to control and manage the operation of the Plan and will be the Plan Administrator and named fiduciary as defined in ERISA. TPA will not be a fiduciary under the Plan nor will this Agreement be deemed to confer upon TPA any (1) authority or control over the management and control of the Plan or (2) responsibility for the validity or interpretation of the terms of the Plan.

(d) <u>Continuing Liability of Employer and Trustee</u>: Neither this nor any other agreement will relieve Employer or other designated fiduciaries, including any Trustee, of any of the responsibilities or liabilities imposed by ERISA.

(e) <u>Reliance on Employer</u>: TPA will rely for its performance of its services under this Agreement solely on the information submitted to it by Employer. TPA is not responsible for any penalties, sanctions, taxes or any other liability due to the failure of Employer to submit accurate information to TPA on a timely basis.

(f) <u>No Liability for Acts of Prior Administrator</u>. TPA will not be liable or responsible for anything done or omitted in the administration of the Plan prior to the Effective Date, nor, except on Employer's written direction, will TPA be required to inquire into or take any action concerning the acts of any prior administrator.

## ARTICLE VII
## AMENDMENT AND TERMINATION

(a) <u>Amendment</u>: No amendments to this Agreement will be binding unless executed in writing by FCE and Employer, and no change in any Service Provider to the Plan and Trust will be effective unless approved in writing by both FCE and Employer.

(b) <u>Term</u>: The term of this Agreement will begin on the effective date of this Agreement and end when terminated by either party on 60 days prior written notice to the other party, so long as this Agreement ends on the anniversary of the insurance contract/s covering the Plan benefits.

(c) <u>Responsibilities on Termination</u>: On any termination of this Agreement, FCE will complete the processing of all requests for benefit payments under the Plan which are received by FCE prior to the effective date of termination except FCE will not be obligated to process benefit payment requests if Employer fails to fund benefit payments until all funds requested by FCE have been furnished.

(d) <u>Benefits for Unallocated Assets:</u> In addition to its other rights and obligations under the Plan and this Agreement, Employer will have the authority, from time to time, to establish guidelines for the disposition of Unallocated Assets to provide additional

8

© Copyright 2004 FCE Benefit Administrators, Inc. All Rights Reserved

benefits to Participants and Beneficiaries under the Plan, either for the balance of the then current Plan Year or for a shorter period. In exercising its authority to establish guidelines for the disposition of Unallocated Assets to provide additional benefits under the Plan and this Agreement, either for the balance of the then current Plan Year, or for a shorter period, Employer will not exercise its discretion in a discriminatory manner. If Employer adopts guidelines for the disposition of Unallocated Assets to provide additional benefits under the Plan and this Agreement, Employer will provide Participants and their beneficiaries under the Plan with written notice of those additional benefits, and a reasonable period of time within which to submit a claim for payment of those benefits. In addition, Employer will provide to Trustee and to FCE written notice of those guidelines, as well as with written directions to pay those benefits, in those amounts, for claims incurred during those period(s) of time, and on those terms and conditions as Employer may designate, and any other guidance necessary and appropriate in order to implement those guidelines and provide those additional benefits.

## ARTICLE VIII
## MISCELLANEOUS

(a) <u>Captions</u>: The captions and headings of the Sections and subsections of this Agreement are for convenience of reference only and are not to be used in the interpretation of this Agreement.

(b) <u>Late COBRA Notification</u>. While all parties will make every effort to make sure that information is timely transmitted regarding employee terminations and that COBRA election notices are timely sent, in the event that a COBRA election notice is not timely sent thereby causing an otherwise qualified employee to elect COBRA coverage after the required election period, any party in interest to the Plan (Employer/Plan Sponsor, Plan Administrator, Third Party Administrator or Trustee) may upon discovery of such unintended delay pay COBRA premium to the Plan on behalf of the affected former Plan participant from the date coverage under COBRA would have first been effective through the date approximately forty-four days prior to the date an election notice is mailed, and the Plan shall be responsible for paying claims incurred during such time period.

(c) <u>Additional Documents</u>: Each party to this Agreement agrees to cooperate with the other in good faith and will, on demand, execute any other documents or instruments necessary or convenient to carry out the provisions and intent of this Agreement.

(d) <u>Entire Agreement</u>: This Agreement contains the entire agreement among the parties for the subject matter of it and supersedes all prior and contemporaneous oral and written agreements, understandings and representations among the parties.

(e) <u>Attorneys' Fees and Costs</u>: If any action in law or in equity, or any submission to arbitration, is necessary to enforce or interpret the terms of this Agreement, or the rights and duties of the parties, the prevailing party will be entitled, in addition to any other

9

© Copyright 2004 FCE Benefit Administrators, Inc. All Rights Reserved

relief that may be granted, to recover all costs and expenses incurred in connection with that action, including reasonable attorneys' fees and costs.

(f) <u>Governing Law and Venue</u>: This Agreement will be governed by the internal laws of the State of California except to the extent preempted by ERISA, COBRA or other applicable federal law and the venue for resolving any dispute under this Agreement will be San Mateo County, California.

(g) <u>Assignment</u>: Neither this Agreement nor any interest in it will be assignable by either party without the prior written consent of the other party.

(h) <u>Successors and Assigns</u>: Subject to any limit on assignment in this Agreement, this Agreement will inure to the benefit of and bind the respective successors in interest, assigns, heirs, and executors and administrators of the parties to this Agreement.

(i) <u>Severability</u>: If any provision of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remaining provisions will nevertheless continue in full force and effect without being impaired or invalidated in any way.

(j) <u>Survival of Representations</u>: All representations, warranties, covenants, and agreements made in this Agreement by the parties will survive the closing of this transaction until satisfied in full.

(k) <u>Construction</u>: As required by the context of this Agreement, each pronoun and parenthetical reference and any defined terms will mean and be construed to include the singular and plural and the masculine, feminine and neuter.

(l) <u>Waiver</u>: No waiver of any of the provisions of this Agreement will be deemed or will constitute a waiver of any other provision, nor will any waiver constitute a continuing waiver. No waiver will be binding unless executed in writing by the party making the waiver.

(m) <u>Notices</u>: Any notice, payment or other communication required or permitted under this Agreement will be deemed effective when personally delivered or deposited in the United States mail, postage prepaid and addressed to Employer at the address provided in the Trust Agreement or to FCE at 887 Mitten Road, Suite #200, Burlingame, CA 94010-1303. Either party may change address for purposes of this Section by sending a notice of that changed address in accordance with this Section.

© Copyright 2004 FCE Benefit Administrators, Inc. All Rights Reserved

IN WITNESS WHEREOF: the Employer acknowledges receipt of the information disclosed and approves the proposed transaction, and has executed this Third Party Administrator Agreement this 1st day of March, 2005 to be effective for contributions beginning April 1, 2005.

EMPLOYER/PLAN SPONSOR/PLAN ADMINISTRATOR

MIDWEST TRANSPORT, INC.

By: _____
    Ken Hohlbaugh

Title: President

THIRD PARTY ADMINISTRATOR

FCE BENEFIT ADMINISTRATORS, INC.
A California Corporation

By: _____
    Gary Beckman, President/CEO

11

© Copyright 2004 FCE Benefit Administrators, Inc. All Rights Reserved