1  DAVID P. STOEBERL (Mo. Bar No. 46024)
   dps@carmodymacdonald.com
2  JULIE L. WATERS (Mo. Bar No. 55314)
   juw@carmodymacdonald.com
3  CARMODY MACDONALD P.C.
   120 South Central Avenue, Suite 1800
4  St. Louis, MO  63105
   Tel:  314-854-8600
5  Fax: 314-854-8660

6  CARTER W. OTT (State Bar No. 221660)
   carter.ott@dlapiper.com
7  DLA PIPER US LLP
   153 Townsend Street, Suite 800
8  San Francisco, California 94107
   Telephone:  415-836-2500
9  Facsimile:  415-836-2501

10 Attorneys for Plaintiff
   MIDWEST TRANSPORT, INC.

11

12              UNITED STATES DISTRICT COURT

13            NORTHERN DISTRICT OF CALIFORNIA

14                   OAKLAND DIVISION

15

16 MIDWEST TRANSPORT, INC., a          CASE NO.  C 07-4408CW
   Delaware Corporation,

17          Plaintiff,                 **JOINT CASE MANAGEMENT
                                       STATEMENT**
18      v.
                                       Date:  March 25, 2008
19 FCE BENEFIT ADMINISTRATORS,
   INC., a California Corporation, et al.   Time: 2:00 pm
20
                                       Location:  Courtroom 2, 4th Floor
21
                                                  Honorable Claudia Wilken
22
   AND RELATED CROSS CLAIMS
23

24

25      Pursuant to the Northern District's Standing Order and the Court's order dated November 28,

26 2007 (Docket No. 29), plaintiff Midwest Transport, Inc. ("Midwest"), defendant and counter-

27 cross-claimant, FCE Benefit Administrators, Inc. ("FCE Benefit") and defendant and cross-

28

claimant, Califia Development Corp. ("CDC") submit this Joint Case Management Statement.

## 1.  JURISDICTION AND SERVICE

This is a civil action brought by Midwest against defendants FCE Benefit and CDC. Midwest alleges claims against FCE Benefit for Breach of Contract, Negligence, and Negligent Misrepresentation.  Midwest alleges claims against CDC for Negligent Misrepresentation and Negligence.  FCE Benefit alleges counterclaims against Midwest for Breach of Contract and Defamation.  At this time, CDC asserts no claims against Midwest.  CDC alleges cross-claims against FCE Benefit for Implied/Equitable Indemnity, Contribution, and Declaratory Relief.  FCE Benefit alleges cross-claims against CDC for Implied/Equitable Indemnity, Contribution and Negligent Misrepresentation.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, because there is complete diversity between Midwest, FCE Benefit, and CDC, and the amount in controversy exceeds the statutory limit.

Venue is proper in the Northern District of California because FCE Benefit's corporate headquarters are located in this district and the acts described in Midwest's First Amended Complaint are substantially related to this district.  Furthermore, the FCE Benefit Third Party Administrator Agreement between Midwest and FCE Benefit ("TPA Agreement") contains a forum selection clause which states:

> Governing Law and Venue:  This Agreement will be governed by the internal laws of the State of California expect to the extent preempted by ERISA, COBRA, or other applicable federal law and the venue for resolving any dispute under this Agreement will be San Mateo County, California.

Venue is proper for the cross-claims as they are filed pursuant to Federal Rule of Civil Procedure 13(g).  Personal and subject matter jurisdiction arise because the cross-claims relate to the same transactions that are the subject matter of the main action, and are therefore ancillary to Midwest's claims.

There are no issues regarding personal jurisdiction or venue. There are no other parties to be served at this time.

## 2. FACTS

### A. Midwest's Description of the Case

Midwest is a federal government contractor that delivers mail throughout the country for the U.S. Postal Service. In 2004, Midwest decided to provide a medical benefits plan for its employees to be designed, administered and implemented by a third party administrator ("TPA"). CDC approached Midwest to serve as a broker to solicit and select a TPA for Midwest's medical benefits plan. Through CDC, FCE Benefit bid for the contract to be Midwest's TPA. FCE Benefit and CDC specifically advised Midwest that FCE would design and implement this medical benefits plan in such a way that Midwest would never have to pay more than the dollar amount of certain fringe benefits it was required to pay its employees as a government contractor ("the Fringe Benefit"). Based upon these representations, Midwest entered into contracts with FCE Benefit. FCE Benefit thereafter put in place and administered the medical benefit plan. CDC continued to serve as the principal communication link between FCE Benefit and Midwest.

FCE Benefit failed to administer the plan in accordance with the parties' contract, FCE Benefit's and CDC's representations, or the standard of care for TPAs or brokers. As a result, the liabilities of the plan exceeded the dollar amount of the Fringe Benefit by approximately $700,000. Neither FCE Benefit nor CDC communicated any problems with the plan in this regard until after the damage had occurred.

After substantial liability came to light, on March 9, 2007, FCE Benefit unilaterally terminated the TPA contract and Midwest's medical benefits plan without giving notice to Midwest, a requirement under the governing documents. Midwest never authorized CDC or anyone else to terminate its medical benefits plan. FCE Benefit also wrongfully informed

Midwest employees that it was Midwest – not FCE Benefit – that unilaterally terminated the medical benefits plan.

As a result of the foregoing conduct by FCE Benefit and CDC, Midwest has been damaged including incurring legal expenses in responding to inquiry by the Department of Labor, a state insurance regulator and a Medicare contractor.

Midwest denies FCE Benefit's claim that Midwest breached the parties' agreement, defamed FCE Benefit, misrepresented any information to FCE Benefit, or failed to adjust benefits upon any recommendations by FCE Benefit.

Midwest also asserts that the communications claimed by FCE Benefit to be defamatory are privileged.

## B.    FCE Benefit's Description of the Case

At all times material hereto, FCE Benefit performed all of its contractual duties owed to Midwest pursuant to the TPA Agreement.  Midwest, through CDC, requested that FCE Benefit terminate its Health & Welfare Plan and Trust.  Midwest, on several occasions, failed to comply with various covenants and obligations under the TPA Agreement, Health & Welfare Plan and Trust Agreement.  Midwest and/or CDC (the admitted agent of Midwest) misrepresented the number of employees who would participate in the Health & Welfare Plan of Midwest Transport, Inc.; the amount of contributions that would be made to the Plan, and the status of certain employees being enrolled in the Plan.  Midwest failed to exercise its duty, authority and responsibility to decrease or delete benefits under the Health & Welfare Plan and Trust based upon recommendations of FCE Benefit.  Such failures to comply constitute a breach of contract.

Midwest in at least one written, unprivileged publication to its employees characterized FCE Benefit as providing "health insurance."  FCE Benefit does not provide "health insurance."  Midwest in at least one written, unprivileged publications to its employees has stated that FCE

Benefit "cancelled our insurance."  Midwest in at least one written, unprivileged publication to its employees has stated that FCE Benefit failed to do what it promised.  Midwest has also, through written publications to its employees, impugned FCE Benefit by claiming that FCE Benefit is the cause of Midwest's failure to provide and pay for medical and health care benefits which it voluntarily agreed to provide to its employees.  The foregoing statements were false and were of the nature to impugn and injure FCE Benefit's business and reputation.

This action is preempted by the Employee Retirement and Income Security Act (ERISA), 29 U.S.C. § 1001 et seq.  Midwest failed to mitigate its damages in this action.  Midwest's own conduct was the cause, in whole or in part, of its alleged damages in this action.  CDC's conduct was the cause, in whole or in part of Midwest's alleged damages in this action.

Midwest's action is barred and/or FCE Benefit's conduct is excused on the basis that Midwest fraudulently or negligently made material misrepresentations.  Such fraudulent or negligent material misrepresentations include, but are not limited to, the number of employees who would enroll in the Health & Welfare Plan of Midwest Transport, Inc.; the amount of contributions that would be made to the plan; and the status of certain employees who were enrolled in the Plan.  FCE Benefit's full or partial performance under the contract was impossible given the conduct of Midwest.  Midwest prevented FCE Benefit's performance under the TPA Agreement by failing to adhere to its own obligations and duties under the Agreement.

**C.    CDC's Description of the Case**

Although this action was filed in August 2007, CDC was not named as a defendant until Midwest filed its amended complaint in late December 2007.  CDC filed an answer and cross-claim in January 2008 and most recently filed its answer to FCE Benefit's counter cross-claim on March 7, 2008.  Consequently, CDC's description of the case is based on the limited information available to it in the time it has been a party to the action.

CDC is an insurance broker. Midwest requested CDC, among other insurance brokers, solicit potential TPA's regarding the implementation of a medical benefits plan. FCE Benefit submitted a proposal to be the TPA for Midwest's medical benefits plan, which was accepted by Midwest. CDC fulfilled its obligation, if any, to Midwest by soliciting potential TPA's for Midwest's plan. The terms of the plan were negotiated by Midwest and FCE Benefit.

CDC never represented to Midwest that FCE Benefit would design and implement the medical benefits plan in such a way that Midwest would never have to pay more than the dollar amount of certain fringe benefits it was required to pay its employees as a government contractor, CDC never misrepresented the number of employees who would participate in the Health & Welfare Plan of Midwest Transport, Inc., the amount of contributions that would be made to the Plan, or the status of certain employees being enrolled in the Plan. CDC was not required to monitor nor was it responsible for monitoring the implementation or operation of the medical benefit plan.

CDC did advise Midwest that, if requested, it would assist with certain communications with FCE Benefit and would consult with Midwest as appropriate regarding the medical benefits program once it was implemented. CDC, however, did not make recommendations to Midwest concerning the medical benefits plan.

In or about March 2007, Midwest informed CDC that it wanted to terminate its medical benefits plan but wanted a recommendation from FCE Benefit concerning timing. Thereafter, FCE Benefit unilaterally terminated Midwest's medical benefits plan without notice. CDC did not request that FCE Benefit terminate Midwest's medical benefits plan. Nevertheless, Midwest could have reactivated the plan, according to FCE Benefit, but decided not to do so.

### D.    Principle Facts in Dispute

1.    Whether FCE Benefit ever advised or represented to Midwest that FCE

Benefit would design, implement and administer the medical benefits plan in such a way that Midwest would never have to pay more than the Fringe Benefit amount.

2.    Whether FCE Benefit properly communicated problems with the medical benefits plan.

3.    Whether FCE Benefit performed all of its contractual duties owed to Midwest.

4.    Whether Midwest, on several occasions, failed to comply with various covenants and obligations under the TPA Agreement, Health & Welfare Plan and Trust Agreement.

5.    Whether Midwest and/or CDC misrepresented the amount of employees who would participate in the Health & Welfare Plan.

6.    Whether Midwest and/or CDC misrepresented the amount of contributions that would be made to the Plan.

7.    Whether Midwest and/or CDC misrepresented the status of certain employees being enrolled in the Plan.

8.    Whether Midwest failed to exercise its duty, authority and responsibility to decrease or delete benefits under the Health & Welfare Plan and Trust based upon recommendations of FCE Benefit.

9.    Whether Midwest improperly characterized FCE Benefit as providing "health insurance."

10.    Whether Midwest falsely stated that FCE Benefit "cancelled our insurance."

11.    Whether Midwest falsely stated the FCE Benefit failed to do what it promised.

12.    Whether Midwest falsely stated that FCE Benefit is the cause of Midwest's failure to provide and pay for medical and health care benefits which it voluntarily agreed to provide for its employees.

13.    Whether FCE Benefit owes Midwest a duty of care.

14.    Whether FCE Benefit met its duty of care, in any.

15.    Whether Midwest has suffered any damages as a result of any conduct by FCE Benefit.

16.    Whether Midwest requested termination of its Medical Benefits Plan.

17.    Whether FCE Benefit is liable for the expense of developing a new plan.

18.    Whether FCE Benefit is liable for any costs incurred in responding to governmental agencies concerning the medical benefits plan.

19.    Whether FCE Benefit is liable for any costs incurred related to any claims by Midwest or its employees.

20.    Whether any party, other than Midwest, is responsible for the payment of medical benefits which Midwest promised to provide to its employees.

21.    Whether CDC holds itself out to be in the business of selling TPA's to government contractors.

22    Whether Midwest selected FCE Benefit based on CDC's representations to it.

23.    Whether CDC advised or represented to Midwest that the cost of the medical benefits plan that FCE Benefit would design, implement and administer would not exceed the fringe dollar obligation.

24.    Whether CDC owes Midwest a duty of care.

25.    Whether CDC met its duty of care, if any.

26.    Whether CDC asserted to Midwest that it would handle communications with FCE Benefit and/or continue to advise Midwest concerning the benefits plan once implemented.

27.    Whether FCE Benefit selected insurers that failed to provide complete stop-loss coverage.

28.    Whether CDC properly communicated with Midwest.

29.    Whether CDC had any duty to advise Midwest concerning any problem with the benefit program.

30.    Whether Midwest has suffered any damage, including the alleged "Uninsured Claims," as a result of any failure to communicate by CDC.

31.    Whether any employee of CDC contacted FCE Benefit to request termination of Midwest's benefit plan.

32.    Whether Midwest desired to terminate its benefit plan.

33.    Whether FCE Benefit unilaterally terminated the plan without notice.

34.    Whether Midwest could have reactivated the plan but decided to not do so.

35.    Whether CDC is liable for the expense of developing a new plan.

36.    Whether CDC is liable for any costs incurred in responding to governmental agencies concerning the benefit plan.

37.    Whether CDC is liable for any costs incurred related to any purported claims by any employees of Midwest concerning the benefit plan.

**3. LEGAL ISSUES**

A.    Whether FCE Benefit breached its contract(s) with Midwest.

B.    Whether FCE Benefit acted negligently in its design, implementation and administration of Midwest's benefit plan.

C.      Whether FCE Benefit and CDC negligently misrepresented facts relating to the medical benefit plan to Midwest.

D.      Whether CDC acted negligently as Midwest's broker.

E.      Whether CDC or Midwest was responsible for the selection of FCE Benefit as the TPA for Midwest's medical benefit plan.

F.      Whether Midwest breached its contract(s) with FCE Benefit.

G.      Whether Midwest and/or CDC made misrepresentations with respect to the number of employees who would enroll in the Health & Welfare Plan of Midwest Transport, Inc.; the amount of contributions that would be made to the plan; and the status of certain employees who were enrolled in the Plan.

H.      Whether the communications FCE Benefit claims are defamatory are privileged.

I.      Whether Midwest defamed FCE Benefit.

J.      Whether Midwest failed to mitigate its damages.

K.      Whether Midwest, through CDC, terminated its medical benefits plan.

L.      Whether FCE Benefit terminated the plan without notice.

M.      Whether Midwest could have reactivated the plan but decided not to.

**4.  MOTIONS**

There are no motions currently pending.  Midwest, FCE Benefit and CDC may file motions for summary judgment at or before the close of discovery.

**5.  AMENDMENT OF PLEADINGS**

Midwest originally filed its Complaint on August 27, 2007.  On October 10, 2007, Midwest filed a motion with the Clerk of the Court to Amend its Complaint.  On December 11, 2007, the Court granted Midwest's Motion to Amend Complaint and Midwest's Motion to Dismiss FCE Benefit's Counterclaim for Indemnity.  On December 24, 2007, Midwest filed its

Amended Complaint.  On January 3, 2008, FCE Benefit filed its Answer to the First Amended

Complaint and Counterclaim for Breach of Contract and Defamation.  On January 25, 2008, CDC

filed its Answer to Midwest's First Amended Complaint and its Cross-Claim Against FCE

Benefit.  FCE Benefit filed its Answer to CDC's Cross-Claim and Counter Cross-Claim on

February 19, 2008.  CDC filed its Answer to FCE Benefit's Counter Cross-Claim on March 10,

2008.  Midwest does not currently know if it will need to add or dismiss parties.  The parties must

commence discovery before Midwest can make this assessment.

**6.  EVIDENCE PRESERVATION**

The parties have agreed to preserve all evidence relevant to the issues reasonably evident in

this action, including but not limited to such writings and recordings as defined by Fed. R. Evid.

1001(d).  Furthermore, the parties shall interdict any document destruction program and ongoing

erasures of emails, voicemail and other electronically-recorded material relating to the issues

raised in this case.

7.  **DISCLOSURES**

Midwest and FCE Benefit will serve initial disclosures on or before March 24, 2008.  CDC

will serve initial disclosures on or before April 8, 2008.

**8.  DISCOVERY**

The parties have agreed on a discovery plan.  To date, there has been no discovery.  Midwest

anticipates serving discovery as soon as it is able to do so under the Federal Rules of Civil

Procedure.

(1)    Changes that should be made in the timing, form, or requirements for disclosures

under 26(a):  No changes are anticipated at this time.

(2)    Subjects on which discovery is needed include: Any documents relating to FCE

Benefit's design, implementation, and administration of the plan, including any and all stop loss

insurance and any communications including denial and payment of any claims by stop loss insures; communications between and among any of the parties to this lawsuit, including Midwest, CDC, and stop loss insurance carriers; and any and all reports and financial documents relating to FCE Benefit's administration of the plan.

(3)    Any issues relating to the disclosure or the discovery of electronically stored information, including the form in which the discovery should be produced:  None are anticipated at this time.

(4)    Issues relating to claims of privilege or protection, whether the court should include such an agreement in its orders:  There may be confidential health care information and proprietary information which will require the issuance of a protective order.

(5)    What changes should be made in the limitations of discovery, what limitations should be imposed:  No changes are anticipated at this time.

(6)    Other orders that should be entered by the Court:  None are anticipated at this time.

**9. CLASS ACTIONS**

Not applicable.

**10. RELATED CASES**

Not applicable at this time.

**11. RELIEF**

**A.**    Midwest seeks a judgment against defendants for monetary damages, interest, and attorneys' fees.

**B**.    FCE Benefit seeks judgment against Midwest for damages, attorneys' fees, interest, and costs.  FCE Benefit seeks an order requiring CDC to defend and indemnify FCE Benefit against claims being asserted by Midwest; for apportionment of damages based upon the

relative fault of CDC; damages, attorneys' fees, interest, and costs.

        **C.**      CDC seeks an order requiring FCE Benefit to defend and indemnify CDC against claims asserted by Midwest; an apportionment of damages based upon the respective fault of Midwest and FCE Benefit; a judicial determination of the comparative fault of Midwest and FCE Benefit for damages claimed by Midwest, if any are found to exits; a judicial determination of the amount that FCE Benefit is obligated to indemnify CDC, if CDC is compelled to pay any sum as a result of any damages judgment; damages; attorney's fees; interest and costs.

**12. SETTLEMENT AND ADR**

        At present, Midwest, FCE Benefit, and CDC believe it will be necessary to develop the facts through discovery before the parties may engage in meaningful settlement discussions. The parties recommend that the Court refer this case for mediation for approximately five months from now to allow the parties to conduct certain discovery. FCE Benefit proposes that the parties engage in Early Neutral Evaluation.

**13. CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES**

        The parties do not consent to proceeding before a Magistrate Judge for all purposes. On September 27, 2007, FCE Benefit filed a Motion Requesting Reassignment to a District Judge. (Docket No. 8). On October 1, 2007, the Clerk reassigned this case to the Oakland Division and to the Honorable Claudia Wilken for all further proceedings. (Docket No. 12).

**14. OTHER REFERENCES**

        The parties do not believe that this case is suitable for binding arbitration. However, as noted above, the parties recommend appointment of a settlement judicial officer at a date after the completion of discovery.

**15. NARROWING OF ISSUES**

        The parties have not yet identified any issues that can be narrowed by motion or

agreement.

**16. EXPEDITED SCHEDULE**

This case is not suitable for expedited scheduling.

**17. SCHEDULING**

**A.    The parties have jointly agreed to the following proposed schedule:**

Last day for fact discovery:  March 23, 2009

Last day for Plaintiff to identify expert witnesses:  March 23, 2009

Last day to depose Plaintiff's experts:  April 24, 2009

Last day for Defendants to identify expert witnesses:  May 4, 2009

Last day to depose Defendants' expert witnesses:  June 5, 2009

Last day to identify rebuttal expert witnesses:  June 22, 2009

Last day to depose rebuttal expert witnesses:  July 24, 2009

Last day to file dispositive motions:  September 25, 2009

Trial:  January 11, 2010

**18. TRIAL**

The case will be tried to a jury.  The parties estimate the trial will last approximately six

days.

**19. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

Midwest is not aware of any non-parties who have a financial interest, or may be

substantially affected by the outcome of this case.  FCE Benefit is not aware of any non-parties

who have a financial interest, or may be substantially affected by the outcome of this case.

Midwest filed a certificate to that effect with the Clerk of the Court on January 17, 2008.

(Docket No. 27).  Similarly, FCE Benefit filed a certificate to that effect with the Clerk of the

Court on September 27, 2007. (Docket No. 9).

1    CDC is not aware of any non-parties who have a financial interest, or may be substantially

2    affected by the outcome of this case.  CDC filed a certificate to that effect with the Clerk of the

3    Court on March 10, 2008.

4    **20. SUCH OTHER MATTERS**

5

6        None.

7

8        Dated:  March 19, 2008

                                    CARMODY MACDONALD P.C.

9

10                                  By: /s/ David P. Stoeberl
                                        DAVID P. STOEBERL
11                                      Attorneys for Plaintiff
                                        Midwest Transport, Inc.

12

13                                       /s/ Robert D. Eassa
                                        ROBERT D. EASSA
14                                      Attorneys for Defendant
                                        FCE Benefit Administrators, Inc.

15

16

17                                       /s/ John H. Stephens
                                        JOHN H. STEPHENS
18                                      Attorneys for Defendant
                                        Califia Development Corp.

19

20

21

22

23

24

25

26

27

28

1

2  DAVID P. STOEBERL (Mo. Bar No. 46024)
   dps@carmodymacdonald.com
3  JULIE L. WATERS (Mo. Bar No. 55314)
   juw@carmodymacdonald.com
4  CARMODY MACDONALD P.C.
   120 South Central Avenue, Suite 1800
5  St. Louis, MO  63105
   Tel:  314-854-8600
6  Fax: 314-854-8660

7  CARTER W. OTT (State Bar No. 221660)
   carter.ott@dlapiper.com
8  DLA PIPER US LLP
   153 Townsend Street, Suite 800
9  San Francisco, California 94107
   Telephone:  415-836-2500
10 Facsimile:  415-836-2501

11 Attorneys for Plaintiff
   MIDWEST TRANSPORT, INC.

12

13                    UNITED STATES DISTRICT COURT

14                   NORTHERN DISTRICT OF CALIFORNIA

15                          OAKLAND DIVISION

16 MIDWEST TRANSPORT, INC., a              CASE NO.  C 07-4408CW
   Delaware Corporation,
17
                 Plaintiff,
18
          v.
19
   FCE BENEFIT ADMINISTRATORS,
20 INC., a California Corporation, et al.

21

22

23                   **CASE MANAGEMENT ORDER**

24          The Case Management Statement is hereby adopted by the Court as the Case Management

25 Order for the above-referenced case and the parties to comply with this Order.

26 Dated: _____        _____
                                      Honorable Claudia Wilken
27                                    United States District Judge

28

   {4644\0007\379685.DOC.4}              16